1    Joseph M. Alioto (SBN 42680)
     Theresa D. Moore (SBN 99978)
2    Joseph M. Alioto, Jr. (SBN 215544)
     Thomas P. Pier (SBN 235740)
3    Angelina Alioto-Grace (SBN 206899)
     ALIOTO LAW FIRM
4    555 California Street, Suite 3160
     San Francisco, CA 94104
5    Telephone: (415) 434-8900
     Facsimile: (415) 434-9200
6    Email: jmalioto@aliotolaw.com

7    [ADDITIONAL COUNSEL LISTED ON LAST PAGE]

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN FRANCISCO DIVISION**

11   Michael C. Malaney, Katherine R. Arcell,      )   CASE NO.: CV 10 2858
     Kieth Dean Bradt, Jose' M. Brito, Jan Marie   )
12   Brown, Robert D. Conway, Rosemary             )   **COMPLAINT FOR**
     D'Augusta, Brenda K. Davis, Pamela Faust,     )   **INJUNCTIVE RELIEF**
13   Carolyn Fjord, Don Freeland, Ted Friedli,     )   **AGAINST VIOLATIONS OF**
     Donald V. Fry, Gabriel Garavanian, Harry      )   **SECTION 7 OF THE**
14   Garavanian, Yvonne Jocelyn Gardner, Lee M.    )   **CLAYTON ANTITRUST ACT**
     Gentry, Jay Glikman, Donna M. Johnson,        )
15   Valarie Ann Jolly, Gail S. Kosach, Rozann     )
     Kunstle, Steve Kunstle, John Lovell, Len      )
16   Marazzo, Lee McCarthy, Lisa McCarthy,         )
     Patricia Ann Meeuwsen, L. West Oehmig, Jr.,   )
17   Cynthia Prosterman, Deborah M. Pulfer,        )
     Sharon Holmes Reed, Dana L. Robinson,         )
18   Robert A. Rosenthal, Bill Rubinsohn, Sondra   )
     K. Russell, Sylvia N. Sparks, June Stansbury, )
19   Clyde D. Stensrud, Sherry Lynne Stewart,      )
     Wayne Taleff, Gary Talewsky, Annette M.       )
20   Tippetts, Diana Lynn Ultican, J. Michael      )
     Walker, Pamela S. Ward, David P. Wendell,     )
21   Christine O. Whalen, and Suraj Zutshi,        )

22                Plaintiffs,                      )
                                                   )
23           v.                                    )
                                                   )
24   UAL CORPORATION, UNITED AIR LINES,            )
     INC., and CONTINENTAL AIRLINES, INC.          )
25                                                 )
                 Defendants.                       )
26   _____       )

27

28

1   Plaintiffs are and will be direct purchasers of airline tickets from one or both of the

2   defendants. The plaintiffs bring this action under Section 16 of the Clayton Antitrust Act, 15

3   U.S.C. §§ 18, 26, to enjoin and prohibit the merger of the defendants United and Continental.

4   Plaintiffs complain and allege as follows:

**INTRODUCTION**

6   1.   On May 3, 2010, the defendants announced that they had agreed to combine in an

7   all stock transaction, valued at more than $8 billion, merging United Air Lines, Inc. ("United")

8   and Continental Airlnes, Inc. ("Continental"), eliminating the substantial competition between

9   them, and merging to create the world's largest airline. It is proposed that the unlawful combine

10   would operate under the United name.

11   2.   The effect of the announced merger between United and Continental may be

12   substantially to lessen competition, or to tend to create a monopoly, in the transportation of airline

13   passengers in the United States and certain submarkets and in violation of Section 7 of the

14   Clayton Antitrust Act, 15 U.S.C. § 18.

15   3.   The probable and planned anticompetitive effects of this unlawful combination

16   are increases in prices and fares, elimination and/or curtailment of services, elimination or

17   curtailment of frequency of flights, curtailment of capacity of aircraft and available seats for

18   passage, elimination of tens of thousands of jobs, the deterioration of quality of service, the

19   addition of charges for amenities otherwise considered part and parcel of the service, the

20   elimination or substantial cutback of traffic to hubs, the creation of monopolies for passenger

21   air traffic from and to major cities, and the encouragement and trend to further concentrate the

22   industry toward ultimate monopoly.

23   4.   Plaintiffs are individuals who have purchased airline tickets from one or both of

24   the defendants in the past, and expect to continue to do so in the future. They are threatened with

25   loss or damage by the defendants' merger in violation of Section 7 in the form of higher ticket

26   prices and diminished service, and, accordingly, they bring this action for preliminary and

27   permanent injunctive relief against the merger pursuant to Section 16 of the Clayton Antitrust

28   Act, 15 U.S.C. § 26.

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

## JURISDICTION

5.    This action is brought under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, to prohibit the consummation and the effectuation of defendants' planned unlawful merger in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. §18. This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Section 16 of the Clayton Antitrust Act, 15 U.S.C. §26, and Title 28 United States Code Sections 1331 and 1337.

## THE PARTIES

6.    Each of the plaintiffs named herein below is an individual and a citizen of the state listed as the address for each such plaintiff, and in the four years next prior to the filing of this action, each plaintiff has purchased airline tickets from one or both of the defendants, and each plaintiff expects to continue to purchase airline tickets from one or both of the defendants or their merged entity in the future:

Michael C. Malaney, 5395 Egypt Creek NE., Ada, MI 49301;

Katherine R. Arcell, 4427 S. Miro St., New Orleans, LA 70125;

Keith Dean Bradt, 690 W 2nd St, Suite 200, Reno, NV 89503;

Jose' M. Brito, 2715 Sage Bluff Ct., Reno, NV 89523;

Jan Marie Brown, 975 Kennedy Dr., Carson City, NV, 89706;

Robert D. Conway, 6160 W Brooks Ave., Las Vegas, NV 89108;

Rosemary D'Augusta, 347 Madrone St., Millbrae, CA 94030;

Brenda K. Davis, 11022 Old Military Trail, Forney, TX, 75126;

Pamela Faust, 6227 Whileaway Dr., Loveland, Ohio 45140;

Carolyn Fjord, 4405 Putah Creek Road, Winters, CA 95694;

Don Freeland, 73801 White Sands Dr., Thousand Palms, CA 92276;

Ted Friedli, 8 Chelton Way, Long Branch, NJ 07740;

Donald V. Fry, 6740 Northrim Ln., Colorado Springs, CO 80919;

Gabriel Garavanian, 104 Sequoia Road, Tyngsboro, MA 01879;

1    Harry Garavanian, 104 Sequoia Road, Tyngsboro, MA 01879;

2    Yvonne Jocelyn Gardner, 10-Gold Coin Ct., Colorado Springs, CO 80919;

3    Lee M. Gentry, 7021 Forestview Dr., West Chester, OH 45069-3616;

4    Jay Glikman, 4265 Marina City Dr #809, Marina del Rey, CA 90292;

5    Donna M. Johnson, 1864 Masters Dr., DeSoto, TX 75115;

6    Valarie Ann Jolly, 2121 Dogwood Loop, Mabank, TX 75156;

7    Gail S. Kosach, 4085 Ramrod Cir., Reno, NV 89519;

8    Rozann Kunstle, 7210 Fleetwood Ct., Colorado Springs, CO 80919;

9    Steve Kunstle, 7210 Fleetwood Ct., Colorado Springs, CO 80919;

10   John Lovell, 1834 Whirlaway Ct., Kentwood, MI 49546;

11   Len Marazzo, 1260 Springer Ct., Reno, NV 89511;

12   Lee McCarthy, 35 Lancashire Place, Naples, FL 34104;

13   Lisa McCarthy, 35 Lancashire Place, Naples, FL 34104;

14   Patricia Ann Meeuwsen, 1062 Wedgewood, Plainwell, MI 49080;

15   L. West Oehmig, Jr., 1017 East Brow Road, Lookout Mountain, TN 37350;

16   Cynthia Prosterman, 527 20th Ave., San Fransisco, CA 94121;

17   Deborah M. Pulfer, 16264 E. Mason Rd., Sidney, OH 45365;

18   Sharon Holmes Reed, 622 Grandview Ave., Kingman, AZ 86401;

19   Dana L. Robinson, 127B Palm Bay Terrace, Palm Beach Gardens, FL 33418;

20   Robert A. Rosenthal, 4659 Bridle Pass Drive, Colorado Springs, CO 80923;

21   Bill Rubinsohn, 261 Old York Road, Jenkintown, PA 19046;

22   Sondra K. Russell, 1206 N. Loop 340, Waco, TX 76705;

23   Sylvia N. Sparks, 3320 Conte Drive, Carson City, NV 89701;

24   June Stansbury, 363 Smithridge Park, Reno, NV 89502;

25   Clyde D. Stensrud, 1529 10th St W., Kirkland, WA 98033;

26   Sherry Lynne Stewart, 6565 Foxdale Cir., Colorado Springs, CO 80919;

27   Wayne Taleff, 768 Farmsworth Ct., Cincinnati, OH 45255;

28   Gary Talewsky, 14 Cow Hill Rd., Sharon, MA 02067;

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

1    Annette M. Tippetts, 2783 East Canyon Crest Dr., Spanish Fork, Utah 84660;

2    Diana Lynn Ultican, 9039 NE Juanita Dr, #102, Kirkland, WA 98034;

3    J. Michael Walker, 11865 Heather Ln., Grass Valley, CA 95949;

4    Pamela S. Ward, 1322 Creekwood Dr., Garland, TX 75044;

5    David P. Wendell, 100 Vine St., Reno, NV 89503;

6    Christine O. Whalen, 1131 Pine St., New Orleans, L, 70118; and

7    Suraj Zutshi, 3333 Saratoga Ct., Sparks, NV 89431

8    7.    Defendant UAL Corporation ("UAL") is a corporation incorporated under the

9    laws of the State of Delaware with its principal place of business in Chicago, Illinois.

10    8.    Defendant UAL is a holding company that owns and operates defendant

11    United.

12    9.    United operates the world's fourth largest airline and the third largest domestic

13    carrier, with more than 108 billion revenue passenger miles ("RPMs") in 2008.

14    10.    One RPM equals one passenger flown one mile. RPMs are the commonly

15    accepted measure of airline sizes in the industry.

16    11.    United is engaged in the business of transporting passengers and cargo and has

17    approximately 43,700 full-time employees.

18    12.    United operates domestic hubs at Los Angeles, San Francisco, Denver,

19    Chicago, and Washington, D.C.

20    13.    United operates a foreign hub in Tokyo to serve its Asia-Pacific route system.

21    14.    United serves European cities.

22    15.    United serves Latin American cities.

23    16.    United will serve African cities beginning in the second quarter 2010.

24    17.    United is a founding member in the so-called Star Alliance®, a global airline

25    alliance with defendant Continental as well as Adria, Air Canada, Air China, Air New

26    Zealand, ANA, Asiana Airlines, Austrian Airlines, Blue 1, bmi, Brussels Airlines, Croatia

27    Airlines, Egyptair, Polish Airlines, Lufthansa, Scandinavian Airlines, Shanghai Airlines,

28    Singapore Airlines, South Africa Airways, Spanair, Swiss International Air Lines, TAP

1  Portugal, Thai Airways International, Turkish Airlines, and US Airways. Star Alliance®

2  members have a combined 19,700 daily flights to 1,077 airports in 175 countries.

3      18.     By reason of that Star Alliance® association "the management teams [of

4  United and Continental] have come to know one another really very well."

5      19.     United has agreements with eight domestic feeder/regional carriers, including

6  Atlantic Southeast Airlines, Colgan Airlines, ExpressJet, GoJet Airlines, Mesa Airlines,

7  Shuttle America, SkyWest Airlines, and Trans States Airlines.

8      20.     United has membership in United Express®, which includes Air Wisconsin,

9  Skywest, Mesa, Republic Airlines, Chautauqua Airlines, Shuttle America, and Trans States

10  Airlines.

11      21.     Defendant Continental Airlnes ("Continental") is a corporation incorporated

12  under the laws of the State of Delaware with its principal place of business in Houston, Texas.

13      22.     Continental is the fourth largest domestic carrier and the fifth largest airline in

14  the world, with more than 80 billion RPMs in 2008.

15      23.     Continental, together with its subsidiaries and divisions Continental Express,

16  (consisting of ExpressJet Airlines and Chautauqua Airlines) and Continental Connection

17  (comprised of Cape Air, Colgan Air, CommutAir, and Gulfstream International Airlines), has

18  more than 2,700 daily departures throughout the Americas, Europe and Asia, serving 132

19  domestic and 137 international destinations.

20      24.     Through its alliance partners, including its membership in StarAlliance®, of

21  which defendant United is also a member, Continental serves more than 750 additional

22  destinations.

23      25.     Continental has and operates hubs in Houston, Cleveland, Guam, and Newark.

24      26.     With its regional partners, Continental carries approximately 63 million

25  passengers per year.

26      27.     Continental also provides scheduled transportation of cargo throughout the

27  United States and around the world.

28      28.     Continental has more than 40,000 full-time employees.

## NATURE OF TRADE AND COMMERCE

29.     The relevant product and geographic markets for purposes of this action are the transportation of airline passengers in the United States, and the transportation of airline passengers to and from the United States on international flights.

30.     United and Continental are substantial rivals and competitors in the relevant market.

31.     United and Continental are substantial potential rivals and potential competitors in the relevant market.

32.     Not only do United and Continental provide competing passenger service against each other on a number of passenger routes, but also they are potentially able to provide competing passenger service against each other on any route anywhere in the United States if they believe it would be profitable to do so.

33.     United has the capability to serve every major market in the United States above 5,000 population.

34.     Continental has the capability to serve every major market in the United States above 5,000 population.

35.     The behavior of United is constrained by the actual and potential competition from Continental throughout the entire relevant market and submarkets.

36.     The behavior of Continental is constrained by the actual and potential competition from United throughout the entire relevant market and submarkets.

37.     The market for the transportation of airline passengers in the United States is in and part of interstate commerce, makes extensive use of the instrumentalities of interstate commerce, and substantially affects interstate commerce. Airline passengers travel in a continuous and uninterrupted flow of interstate commerce. Airline travel is a continuous and uninterrupted flow of interstate commerce. Materials used in the construction of airplanes are purchased and shipped in a continuous and uninterrupted flow of interstate commerce.

1    38.    Any restraint of trade in the transportation of airline passengers in the United

2    States, including the restraints specifically alleged in this complaint, directly and substantially

3    restrains and affects interstate commerce.

4              **CONDUCT GIVING RISE TO VIOLATIONS OF LAW**

5    39.    On May 3, 2010, United and Continental announced an agreement in which the

6    two carriers will combine to form a new company with an equity value of $8.3 billion.

7    40.    The new airline will be called United.

8    41.    The chief executive officer of the combined company will be Jeff Smisek, the

9    current chairman, president, and CEO of Continental.

10   42.    Glenn Tilton, chairman, president, and CEO of defendant UAL Corporation

11   ("UAL"), will serve as non-executive chairman of the combined company's Board of

12   Directors through December 31, 2012, or the second anniversary of closing, whichever is

13   later.

14   43.    Mr. Smisek will become executive chairman of the Board when Mr. Tilton

15   ceases to be non-executive chairman.

16   44.    Through secret and private meetings, Mr. Smisek of Continental met on more

17   than one occasion with Mr. Tilton of UAL.

18   45.    One or more the secret and private meetings of Mr. Smisek and Mr. Tilton

19   were carried on outside of their offices, including hotel rooms.

20   46.    At one or more of the secret and private meetings, Messrs. Smisek and Tilton

21   discussed the purposes and probable effects of the merger.

22   47.    At one or more of the secret and private meetings, Messrs. Smisek and Tilton

23   discussed airline fares in general and specifically.

24   48.    At one or more of the secret and private meetings, Messrs. Smisek and Tilton

25   discussed the frequency of flights.

26   49.    At one or more of the secret and private meetings, Messrs. Smisek and Tilton

27   discussed the elimination or curtailment of the use of hubs.

28

1   50.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

2   discussed the curtailment of capacity.

3   51.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

4   discussed the firing of employees.

5   52.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

6   discussed the type of aircraft to be eliminated.

7   53.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

8   discussed the charges for services previously given to passengers for free.

9   54.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

10   discussed the possible combination of American Airlines and US Airways.

11   55.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

12   discussed the potential fare increases in the monopoly submarkets that would be created by the

13   combine.

14   56.   At one or more of the secret and private meetings, Messrs. Smisek and Tilton

15   discussed the potential fare increases in the duopoly submarkets created by the combine.

16   57.   The combined company and its regional partners will carry over 120 million

17   passengers per year, provide access to more than 370 destinations in 59 countries, have

18   approximately $30 billion in annual aggregate revenues and $7.4 billion in unrestricted cash,

19   operate a mainline fleet of 693 aircraft, and employ approximately 76,900 people worldwide.

20   58.   Combined, United and Continental will have more than 203 billion RPMs.

21   Domestically, their combined RPMs comprise 21 percent of domestic capacity, which tops the

22   current domestic leader, Delta Air Lines, Inc., which had 189 billion RPMs in 2009, which

23   comprises a market share of 20 percent.

24   59.   Globally, the combined company will control 53 percent of all traffic on Pacific

25   routes.

26   60.   Together, United and Continental serve 30 common international destinations,

27   representing 65% of their total international seat capacity.

28

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

61. If the merger is consummated, the new combined United will surpass Delta as the largest domestic airline for flights across the Atlantic ocean, with 40 percent of passenger traffic, and would control 53 percent of traffic across the Pacific ocean.

62. If the merger is consummated, the United States will be left with just three international airlines: the new combined United, Delta, and American, while U.S. Airways Group, Inc. will trail a distant fourth with less than one-third the share of American's.

63. If the merger is consummated, it will result in lower capacity; that is, fewer seats in the sky, which, in turn, will result in higher ticket fares for consumers.

64. J.P. Morgan estimates that, if the merger closes, defendants would reduce their overall capacity by 8 percent.

65. Defendants' merger would take place in and further concentrate an already highly concentrated market, characterized by mergers, including the most recent merger of Delta and Northwest Airlines in 2006, which made Delta the world's largest carrier, a title that will be passed to the new combined United.

66. In addition, defendants themselves are the products of mergers and acquisitions.

67. In 1985, United bought its Pacific routes from Pan American World Airways, making United a major international carrier.

68. For its part, Continental acquired Frontier, People Express, and New York Air in 1987.

69. Others mergers include that between Northwest and Republic Airlines in 1986, and between U.S. Airways and America West in 2005.

70. Attached hereto as Exhibit A and hereby incorporated herein by reference is a chart depicting the history of mergers and increasing concentration in the United States airline industry. Attached hereto as Exhibits B and C are the rankings of the top airlines in the United States pre-merger and post-merger.

71. The new United will operate 8 hubs, including hubs in the four largest U.S. cities.

72.   Defendants' merger will increase market concentration in four of the 100 largest U.S. cities, namely, Washington, D.C., San Diego, Seattle, and New Orleans.

73.   In addition, at the airport level, the following 17 domestic airports will experience undue increases in market concentration as a result of the defendants' merger: Houston Intercontinental (combined United will control 64 percent market share), Newark Liberty International (55 percent market share on domestic routes; 65 percent for international travel), San Francisco International (40 percent market share), Chicago O'Hare International (35 percent market share), Los Angeles International, New Orleans, Cleveland Hopkins, Denver, San Diego, Orange County, Honolulu (HNL), Ontario California, Las Vegas, Tampa, Sacramento, Yampa Valley Colorado, and Vail.

74.   The new combined company's dominance at the airports listed in paragraph 21 is substantially likely to result in higher fare prices for flights to or from those airports.

75.   Defendants have overlapping non-stop flights on 12 routes, including, inter alia, Newark to Chicago, Cleveland to Chicago, Denver to Newark, and Houston to Denver. Defendants' combination is likely to result in higher fare prices on these routes.

76.   If the combination of United and Continental were allowed, ten airports would be a monopoly. This creation of monopolies in these markets will likely result in increases in fares and reduction of service.

77.   If the combination of United and Continental were allowed, 120 airports would be a duopoly. This creation of a duopoly in these markets will likely result in increases in fares and reduction of service.

78.   If the combination of United and Continental were allowed, 454 airports would be reduced to three competitors. This creation of a triumvirate in these markets will likely result in increases in fares and reduction of service.

79.   If the combination of United and Continental were allowed, 387 airports would be reduced to four competitors. This creation of an oligopoly in these markets will likely result in increases in fares and reduction of service.

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

80.     If the combination of United and Continental were allowed, 143 airports would be reduced to five competitors.  This creation of an oligopoly in these markets will likely result in increases in fares and reduction of service.

81.     If the combination of United and Continental were allowed, the combine would have monopoly service from San Francisco to Houston, from San Francisco to Newark, from Denver to Newark, from Newark to Dulles, Washington, D.C., from Houston to Dulles, Washington, D.C., from Cleveland to Denver, and from Cleveland to Dulles, Washington, D.C.  This creation of monopolies in these markets will likely result in increases in fares and reduction of service.

82.     Non-stop service is typically preferred by some passengers.

83.     United and Continental overlap on 12 non-stop airport pair routes.  For seven of the 12 non-stop overlapping airport routes (generally between a United hub and a Continental hub), there are currently no other competitors.

84.     In March 2010, Continental initiated non-stop service between Los Angeles and Kahului Airport in Hawaii, which is also served by United.

85.     Relevant competition exists between airports in which at least one of the end point cities of the two airlines exists.  For example, passengers traveling from San Francisco to Newark could consider airlines serving other airports at both end point – Oakland or San Jose instead of San Francisco and John F. Kennedy and La Guardia instead of Newark.

86.     In addition, there is overlap between markets served by United out of Chicago and Continental out of Cleveland.  For example, 52 out of 62 domestic airports served by Continental from Cleveland are also served by United from Chicago.

87.     A passenger traveling internationally may view alternate routes to a location in Europe as substitutable.  Continental and United serve many of the same international destinations in Europe and the Americas from their Newark and Dulles hubs, respectively.  These include, for example, Amsterdam, Brussels, Frankfurt, London, Montreal, Paris, Rome, San Paulo, and Toronto.

88.     Similarly, both airlines also serve many international destinations from their mid-West hubs – most notably United's hub at Chicago and Continental's hub at Houston. Such destinations include Amsterdam, Cancun, Edmonton, London, Paris, San Jose Cabo, Tokyo, and Vancouver.

89.     United and Continental serve 30 common international destinations, representing 65 percent of their total international seat capacity.

90.     Following deregulation in 1978, many mergers and acquisitions took place: Delta Air Lines merged with Western Airlines; United Airlines acquired Pan American Airlines' Pacific routes; Northwest acquired Republic Airlines; American Airlines and Air California merged; American acquired TWA; America West acquired US Airways; and in October 2008 Delta acquired Northwest.

91.     In addition, since deregulation, the legacy carriers bought or controlled the new and growing feeder airlines with the specific purpose and intent of preventing them from becoming major competitors.

92.     In addition, defendants compete now on hundreds of domestic connecting routes, where competition will be reduced or eliminated as a result of defendants' merger.

93.     Continental also competes with United on service to Europe, Canada, Asia, and Latin America, where competition will be eliminated or substantially diminished by defendants' merger. For example, defendants' merger would substantially lessen competition on routes between the U.S. and Beijing, where United and Continental provide substantial connecting services.

94.     Furthermore, the new airline will operate in a more highly concentrated market. The Herfindahl-Hirschman Index or HHI for the United States airline industry will increase from 2251 from 2790 for the so-called Legacy carriers (major hubbed airlines), and from 1912 to 2343 for the Legacy carriers plus Southwest Airlines. As a result, prospects for effective collusion among the airlines remaining after defendants' merger will substantially increase.

95.     The potential for increased collusion among the remaining airlines is significant, because the domestic passenger airlines, including, *inter alia*, these defendants,

- 13 -

1    have in the past colluded to fix prices with regard to airfares, surcharges, and cargo prices, and

2    to fix other terms and conditions of air transportation and travel.

3        96.    In addition to the degree of market concentration, there are significant barriers

4    to entry in the relevant market, as well as a history of a lack of successful new entry.  There

5    have been only two new major carriers in recent years:  Southwest Airlines and Jet Blue, and

6    both of these entrants took substantial time to develop and still remain small factors in the

7    market.  On the contrary, the relevant market has been characterized by the exit, rather than

8    the entry, of firms.  In addition, defendants' combination will create an airline with ten hubs,

9    making entry into markets between such hubs particularly difficult for a non-hub carrier

10   because the intended entrant does not have access to feed traffic and because the combined

11   United, as hub carrier, will have significant marketing advantages.  The prospect of new entry

12   is therefore unlikely to eliminate any of the anticompetitive effects that will eventuate from

13   the defendants' merger and the increasingly concentrated structure of the relevant market.

14       97.    The defendants' proposed merger will cause harm to consumers, including the

15   plaintiffs, by generating higher airfares, by reducing the number of flights on particular routes,

16   and by eliminating air service to smaller communities.  Consumers, including the plaintiffs,

17   will thus pay more for less airline service than would be the case in the absence of defendants'

18   merger.

19       98.    The defendants' proposed merger is also likely to lead to other mergers and

20   further concentration in the already highly concentrated relevant market.  If defendants'

21   merger closes, American Airlines, which until the Delta-Northwest merger was the largest

22   domestic airline, will likely combine with another carrier, like U.S. Airways, the only

23   remaining medium-sized carrier.  Both of the CEO's of American and U.S. Airways have

24   already indicated publicly of their approval of the elimination of capacity and of their desire to

25   further concentrate the industry and eliminate even more capacity, with the obvious result of

26   higher fares.

27       99.    United States Representative James Oberstar (D-Minn.), chairman of the House

28   Committee on Transportation and Infrastructure, has publicly opposed defendants' merger.

He wrote in a May 5, 2010, letter to the Department of Justice that, if defendants' merger is consummated, "carriers will concentrate their efforts on fortress hubs and on the routes they dominate. There will be strong incentives to refrain from competition. There will be less service and fares will rise."

100. There are 29 major airports in the United States, located in the following cities: Atlanta, Baltimore, Boston, Charlotte, Chicago, Dallas, Denver, Detroit, Fort Lauderdale, Houston, Las Vegas, Los Angeles, Miami, Minneapolis, New York, Newark, Orlando, Philadelphia, Phoenix, Portland, Salt lake City, San Diego, San Francisco, Seattle, Tampa, and Washington D.C.

101. Each major U.S. passenger airline, including defendants United and Continental, has the ability and financial capacity to offer competitive flights between any two major cities in the United States, whether or not they are currently offering such flights.

102. Each major U.S. passenger airline, including defendants United and Continental, has the ability and financial capacity to establish a competitive presence in any of the major airports located throughout the United States by, inter alia, leasing or otherwise utilizing terminal slots, hiring employees, and directing more flights to and from the given airport.

103. Since the major airlines already offer flights to and from various major U.S. cities, each such airline, including defendants United and Continental, necessarily has the managerial expertise to offer similar flights between any two major cities in the United States.

104. The major U.S. passenger airlines, including defendants United and Continental, frequently trade, sell, lease or purchase slots from other airlines in each of the major 29 airports throughout the United States.

105. The major U.S. passenger airlines with significant market share in specific regions or major airports, including defendants United and Continental, endeavor to keep other major airlines from entering the market with competitive flights. However, Continenal has entered the Maui market against United and Delta has entered the Chicago market against

1  United and American, showing that the potential competition without a merger allows new

2  entry into markets.

3      106.    On information and belief, each of the major U.S. passenger airlines, including

4  defendants United and Continental, has created internal documents reflecting a financial and

5  economic cost/benefit analysis of increasing its presence in each or many of the major U.S.

6  airports.

7      107.    According to the United States Government Accountability Office, the

8  combination of United and Continental would "result in the loss of one effective competitor

9  (defined as having at least five percent of total traffic between airports) in 1,135 markets

10  (called airport pairs) effecting almost 35,000,000 passengers ..."

11      108.    Paragraph 107 is true and correct.

12      109.    On information and belief, each of the major U.S. passenger airlines, including

13  defendants United and Continental, has created internal documents reflecting its analysis of

14  how the market for air transportation would be impacted within each regional market or major

15  U.S. airport by the entry of another major U.S. passenger airline into that region or major

16  airport.

17      110.    The entry of United or Continental into regions or major airports that are

18  dominated, controlled, or serviced by other major passenger airlines would result in lower

19  prices, increased service levels, and/or other pro-competitive effects on flights within the

20  region to or from the given major airport.

21      111.    As the foregoing paragraphs show, the effect of the defendants' merger, if

22  consummated, may be substantially to lessen competition, or to tend to create a monopoly in

23  the relevant markets.

24      112.    By reason of the defendants' proposed merger, the plaintiffs are threatened

25  with loss or damage in the form of higher ticket prices and diminished service. If the

26  defendants' merger is consummated, the plaintiffs will sustain irreparable harm for which

27  damages will be unable to compensate plaintiffs, in that service once lost cannot easily be

28

1    restored. Accordingly, plaintiffs bring this action for both preliminary and permanent

2    injunctive relief against defendants' merger.

3                                **VIOLATION ALLEGED**

4                               **Clayton Act, Section 7**

5          113.    The conduct of defendants described hereinabove, specifically their agreement

6    to merge, constitutes a violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, in

7    that the effect of the proposed merger of defendants may be substantially to lessen

8    competition, or to tend to create a monopoly in the transportation of airline passengers in the

9    United States and the transportation of airline passengers to and from the United States on

10   international flights; by reason of which violation the plaintiffs are threatened with loss or

11   damage in the form of higher ticket prices and diminished service, as well as irreparable harm

12   for which damages will be inadequate to compensate plaintiffs, such that plaintiffs are entitled

13   to bring suit under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, to obtain

14   preliminary and permanent injunctive relief against defendants' merger, and to recover their

15   cost of suit, including a reasonable attorney's fee.

16                                **PRAYER FOR RELIEF**

17         WHEREFORE, plaintiffs demand the following relief from this Honorable Court:

18         A.     Declaring, finding, adjudging, and decreeing that the agreement of the

19   defendants to merge violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

20         B.     Preliminarily enjoining the defendants from consummating their merger during

21   the pendency of this action.

22         C.     Permanently enjoining the defendants from consummating their merger.

23         D.     Awarding to plaintiffs their cost of suit, including a reasonable attorney's fee,

24   as provided by Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

25         E.     Granting to plaintiffs such other and further relief to which they may be entitled

26   and which the Court finds to be just and appropriate.

27

28

Dated: June 29, 2010

ALIOTO LAW FIRM
GRAY PLANT MOOTY MOOTY & BENNETT, P.A.
MESSINA LAW FIRM, PC

By:_____
　　　Joseph M. Alioto
ALIOTO LAW FIRM
555 California Street, Suite 3160
San Francisco, CA  94104
Telephone:  (415) 434-8900
Facsimile:  (415) 434-9200
E-mail:  jmalioto@aliotolaw.com

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

PLAINTIFFS' COUNSEL 

1

2   Joseph M. Alioto (SBN 42680)
    Theresa D. Moore (SBN 99978)
3   Joseph M. Alioto, Jr. (SBN 215544)
    Thomas P. Pier (SBN 235740)
4   Angelina Alioto-Grace (SBN 206899)
    ALIOTO LAW FIRM
5   555 California Street, Suite 3160
    San Francisco, CA 94104
6   Telephone: (415) 434-8900
    Facsimile: (415) 434-9200
7   Email: jmalioto@aliotolaw.com

8   Daniel R. Shulman (MN SBN 100651)
    *Pending Pro Hac Vice*
9   Julie Lynn Boehmke (MN SBN 317330)
    *Pending Pro Hac Vice*
10  Jeremy L. Johnson (MN SBN 328558)
    *Pending Pro Hac Vice*
11  GRAY, PLANT, MOOTY, MOOTY & BENNETT
    500 IDS Center
12  80 South 8th Street
    Minneapolis, MN 55402
13  Telephone: (612) 632-3000
    Facsimile: (612) 632-4335
14  Email: daniel.shulman@gpmlaw.com
    Email: julie.boehmke@gpmlaw.com
15  Email: jeremy.johnson@gpmlaw.com

16  Gil D. Messina (NJ SBN GM5079)
    *Pending Pro Hac Vice*
17  MESSINA LAW FIRM PC
    961 Holmdel Road
18  Holmdel, NJ 07733
    Telephone: (732) 332-9300
19  Facsimile: (732) 332-9301
    Email: gmessina@messinalawfirm.com

20

21

22

23

24

25

26

27

28

*Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Antitrust Act*

# EXHIBIT A

# Origins of Legacy Airlines and Southwest
## History of Mergers and Acquisitions



**EXHIBIT B**



# Rankings of Top Airlines in U.S.
## Revenues (Pre-Merger - 2010)*

Revenues ($ Million)

| Airline | Revenue |
|---|---|
| Delta | $28,063 |
| AA | $19,917 |
| United | $16,335 |
| Continental Airlines | $12,586 |
| US AIRWAYS | $10,458 |
| Southwest | $10,350 |

* Source: Fortune magazine, May 3, 2010



FORTUNE 500

# Rankings of Top Airlines in U.S.
## Revenues (Post-Merger)*



*\* Source: Fortune magazine, May 3, 2010*