Michael Friemann
Box 303
Segundo CA 90245
Phone: 310-3222674

FILED
2010 JUL -8 P 3:50
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT of CALIFORNIA
COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA

| | |
|---|---|
| MALANEY, et al, | ) Case No.: CV-10-2858 RS |
| Plaintiff, | ) AMICUS CURIAE - BRIEF by Michael Friemann |
| vs. | ) In support -of Plaintiff- To deny merger attempt |
| UAL Corp., et al, | ) |
| Defendant, | ) Judge: TBA Hearing Date : TBA |

Michael Friemann, herewith filed this Brief of "*AMICUS CURIAE* " with the Honorable Court in support of Plaintiff Motion to deny merger attempt.

**Table of Contents**

I. Points and Authorities
II. Statement of Identity and Interest of Amicus Curiae
III. Statutes
IV. Introduction
V. Facts & Figures behind the Merger Attempt
VI. Conclusion

## I. Points and Authorities

**Statutes**

**Title 15 U.S.C. § 12-27, 29 U.S.C. § 52-53 Clayton Act**

**Title 15 U.S.C. § 1-7 ch. 647, 26 Stat. 209 Sherman Act**

**Title 15 U.S.C. U.S.C. § 18 (1950) acquisitions-**

**TITLE 49 > SUBTITLE VII > PART A > subpart ii > CHAPTER 411 > § 41102**

**Cases**

*Cargill, Inc. v. Monfort of Colorado, Inc.* 479 U.S. 104, 124
*United States v. General Dynamics Corp.*, 415 U.S. 486, 505 (1974)
*United States v. Rockford Mem. Corp.,* 717 F Supp. 1251 , 1289 (7th Circuit), cert. denied, 498 U.S. 920 (1990)
*FTC v. University Health, Inc.* 938 F. 2d 1206, 1223(11th Cir. 1991)
*U.S. Department of Justice & Federal Trade Comm.*.-Horizontal Merger Guidelines §4, at 31 (rev. Apr 8,1997)
*United States v. Philadelphia National Bank*, 374 U.S. 321, 371 (1963)

**II. Statement of Identity and Interest in Amicus Curiae**

Michael Friemann long time member of the aviation community with keen interest and belief system that consumers must have the freedom of choice in air transportation. A merger between United A/L Corp. and Continental A/L Corp will limit available choices, lessen competition, drive up fares, in certain markets create near monopoly status and control valuable airport slots at choice business airports. As asst. VP Flight Operations for Capitol A/L I witnessed the direct effect during deregulation of the airline industry when Capitol entered the scheduled transcon market and fares sunk overnight to below the $100 mark. In the 1990's LTU International Airways obtained scheduled authority under 402 foreign carrier permit. As General Manager and VP North America for LTU we introduced the lowest fares to Europe from all US gateways and achieved 98% load factor. Competitors responded by lowering their fares to maintain market share. Fare price was the ultimate choice in a market with no loyalty. In a given city-pair market merging airlines consolidate overlapping routes and frequencies drop with the result consumer having less choice and with a reduced market supply fares increase.

**III. Statutes**

**TITLE 49 > SUBTITLE VII > PART A > subpart ii > CHAPTER 411 > § 41102**

**§ 41102. General……….air transportation certificates of air carriers**

**(1)** Before issuing a certificate under subsection (a) of this section, the Secretary must find that the citizen is fit, willing, and able to provide the transportation to be authorized by the certificate and to comply with this part and regulations of the Secretary.

**(2)** In addition to the findings under paragraph (1) of this subsection, the Secretary, before issuing a certificate under subsection (a) of this section for foreign air transportation,

**must find that the transportation is consistent with the public convenience and necessity.......................**.

Thus a DOT a U.S. air carriers engaged in scheduled commercial air services and holder of a "certificate of public convenience and necessity"-(and Foreign Carrier Permit) should be required to maintain (for several years frequencies)as they do today.

Merged airlines consolidate overlapping routes and thus - reduce frequencies. Pursuant to the timetable dated July 1,2010- a combined United A/L and Continental A/L operate a total of 18 daily flights between the Houston - IAH hub and Chicago O'Hare hub - providing in more than 2,150 daily seats (**Exhibit 9**).
(The Chicago - Houston overall market sees an additional 7 daily flights from Chicago-Midway to Houston-Hobby operated by Southwest A/L. Thus, the overall market capacity Chicago- Houston market has a daily seat capacity of 3,150 seats.

Should the merger attempt between United A/L and Continental A/L be approved it is more than certain- the merged carriers will consolidate seat capacity in the Chicago-Houston market. A 10% reduction in offered capacity - ie 210 seats- means 215 daily passengers will have to find capacity elsewhere ? meaning - they are being inconvenienced.

The other result are high load factors - meaning : inconveniencing passengers.

**Statutes**

**Title 15 U.S.C. § 12-27, 29 U.S.C. § 52-53 - Clayton Antitrust Act**
**15 U.S.C. § 1-7 ch. 647, 26 Stat. 209 - Sherman Antitrust Act**

The term **"monopolization"** refers to an offense under Section 2 of the American **Sherman Antitrust Act**, passed in 1890. Section 2 states that any person "who shall monopolize . . . any part of the trade or commerce among the several states, or with foreign nations shall be deemed guilty of a felony." Section 2 also forbids "attempts to monopolize" and "conspiracies to monopolize."

The Clayton act specifies particular prohibited conduct, the three-level enforcement scheme, the exemptions, and the remedial measures.

The **Sherman Antitrust Act** requires the United States Federal government through its court systems to investigate and pursue trusts, companies and organizations suspected of violating the Act.

There cannot be a denial to the fact a United A/L and Continental A/L already dominate certain U.S. airport - referred to as a hub airport. In 2009 - Newark,NJ airport registered 22,105,255 domestic passengers. Continental A/L carried almost **50%** of that **traffic**- or 11,427,479 domestic passengers. United carried 890,339 domestic passengers at Newark. Based on these traffic figures, a United & Continental A/L will enjoy a monopoly of **55.7** % of the domestic traffic at Newark. Newark in 2009 also had a total of 8,180,889 International passengers and Continental flew 6,947,974 of those passengers - **or 84.9% .**

From a total 32,197,411 domestic passengers (Inclusive executive jet passengers- commuter traffic) in 2009 at Houston IAH airport, Continental A/L flew 19,972,774 passengers -**or 62**%. United carried 554,735 domestic passengers at IAH and a combination of both airlines will amount to 63.7% of the domestic IAH traffic. Houston also had International traffic total of 7,809,943 in 2009 and Continental A/L flew **65.3%** of that or 5,100,029 International passengers.

At Cleveland airport Continental flew over 60% of the total 9,715,604 passengers in 2009.

At O'Hare-airport United /United Express flew over **45%** of the total 2009 64,397,782 passenger traffic.

At Los Angeles LAX airport - a combined United & Continental A/L a total of 9,171,711 domestic passengers in 2009 for a domestic market share of **24.3%.** Both airlines carried an additional 684,915 International passengers at LAX in 2009.

A United & Continental merger will also have a majority market share at San Francisco, Honolulu, Guam, Denver airport based on 2009 traffic.

**Clayton Act § 7, 15 U.S.C. § 18 (1950)**

Section 7 of (amended) Clayton Act explicitly applies to partial acquisitions, ie " preventing one company from purchasing part of a competitor's stock " where, in the words of the statute, the acquisition **may** substantially lessen competition.

Section 7 reads in pertinent part:
No person . . . shall acquire, directly or indirectly, the whole or any part of the stock . . . of another person . . ., where in any line of commerce . . . in any section of the country, the effect of such

acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18. Section 7 " is intended to cope with monopolistic tendencies before they culminate and well before they have attained such effects as would justify a Sherman Act proceeding." **Cargill, Inc. v. Monfort of Colorado, Inc.**, 479 U.S. 104, 124 (The Court's inquiry under section 7 is predictive in nature. The government **need not show** that an actual restraint occurred, only that it may occur in the future. **FTC v. Proctor & Gamble Co.**, 386 U.S. 568, 577 (1967);

"It is the **probable effect of the merger** *upon the future as well as the present* which the Clayton Act commands the courts . . . to examine." **Brown Shoe Co. v. United States**, 370 U.S. 294, 333 (1962).

"The mere nonoccurrence of a substantial lessening of competition in the interval between acquisition and trial does **not mean that no substantial lessening will develop thereafter**; the essential question remains whether the probability of such *future* impact exists at the time of trial." **United States v. General Dynamics Corp.**, 415 U.S. 486, 505 (1974)

"The court should remember that the mandate of the Congress is in terms of the probability **of a lessening of substantial competition**, not in terms of tangible present restraint." **United States v. Penn-Olin Chem. Co.**, 378 U.S. 158, 177 (1964).

The government **need not demonstrate** the predicted anticompetitive effect with certainty or, indeed, "even a high probability." **FTC v. Elders Grain, Inc.**, 868 F.2d 901, 906 (7th Cir. 1989).

The proper **standard of proof is a "reasonable probability" of substantially lessened competition. FTC v. Proctor & Gamble Co.**, 386 U.S. at 577.

"All that is necessary is that **the merger create an appreciable danger of [higher prices] in the future**. A predictive judgment, necessarily probabilistic and judgmental rather than demonstrable . . . is called for."); Crouse-Hinds Co. v. Inter north, Inc., 518 F. Supp. 416, 422 (N.D.N.Y. 1980). Such effects may include not only a rise in prices, but a decline in quality.

It is unlikely a United A/L & Continental A/L will prove a combination will benefit the public - in becoming more efficient.

United A/L - after abrogating their pension plan onto the Pension Guarantee Corp. and thus 'reducing own costs ' and after undergoing CH11 and further cost reduction - showed 1st quarter 2010 CASM costs (excluding fuel) of **9.7 cents (highest of legacy airlines)**. JetBlue had CASM cost- excluding fuel -of 6.81 ASM/cents and Southwest of 7.76 ASM/cents. (**see Exhibit 6)**

Thus United cannot prove they will do better and that there are cognizable efficiencies; meaning, efficiencies that benefit the public by, for example, lowering costs, improving quality or enhancing service; and (2) that the efficiencies are "merger-specific," that is, they result from the transaction and cannot be obtained by less competitively harmful means.

Efficiencies defense is subject to a "very rigorous standard;" and the burden of meeting that exacting standard falls squarely on the defendant. **United States v. Rockford Mem'l Corp.**, 717 F. Supp. 1251, 1289 (7th Cir.), *cert. denied*, 498 U.S. 920 (1990). Self-serving statements by defendants' executives alone are insufficient to carry the burden of proof on an efficiencies defense.

Courts have repeatedly rejected efficiencies defenses where defendants have not met their burden of proving the efficiencies were specific to the transaction. **FTC v. University Health, Inc.**, 938 F.2d at 1222 n.30 (stating that courts should require "proof that the efficiencies to be gained by the acquisition cannot be secured by means that inflict less damage to competition"); **FTC v. Cardinal Health, Inc.**, 12 F. Supp. 2d 34, 61-62 (D.D.C. 1998)

**IV. Introduction**

United A/L Corp. executives in conjunction with Continental executives cited " **the need to merge**" - in order to compete with low-cost airlines and on May 2 2010 the Boards of Directors at Continental A/L Inc. and United A/L Corp. approved a stock-swap deal that will form the merged companies into the largest world airline in terms of revenue passenger miles. While that might be an honorable statement- nothing can be further from the truth.

The barometer of costs between our "legacy" airlines and that of so-called low-cost airlines are measured in available seat mile cost of transporting one passenger one mile. **(Exhibit 6)**

To achieve equal or lower costs per ASM for a combined UAL/Continental would carry the need to overhaul- revamp their entire way of doing business- something that would need to be approved by all unionized faction s within both airlines. That is not likely to happen- ever.

For an example- when a Southwest A/L aircraft blocks into a gate- it leaves that gate within 20 minutes onto its next destination. Similarly, a United or Continental aircraft spend one hour or longer at a gate being unload/ loaded, prepared for next flight. As a result,

Southwest aircraft achieve higher aircraft utilization, thus allowing the airline to based overall costs over more flying hours, and achieving a lower unit cost ratio. Southwest employee groups are more efficient, they load /unload aircraft quicker, faster and the same philosophy applies to the airline overall. (**Exhibit 1)**

It is unlikely unionized workgroups at either Continental A/L Corp. or UAL Corp. approving changes to their work environment - to the likes of a Southwest- and to lower costs a United/Continental would have to do change just about every workload.

Executives at UAl/Continental must know this and therefore using the statement of meeting low cost competition are either totally misleading or false.

**V. Facts & Figures behind the Merger Attempt**

**UAL Inc.** currently operating: Date: July 1, 2010

25 B747/400 - 1st aircraft came online June1994- last aircraft online August 1997

19 B777/200 - 1st aircraft came online June 1995 - last aircraft August 2000

33 B777/200ER - 1st aircraft came online March 1997 - last aircraft online February 2002

35 B767/300ER - 1st aircraft came online April 1991- last aircraft online November 2001

96 B757/200 - 1st aircraft came online September 1989- last aircraft online January 1999

152 A319/320 - 1st A319 came online 1997 - 1st A320 came online 1993

Total of 360 aircraft - ( **179 aircraft are 19 years or older.**)

To cost of aircraft replacement is huge - [United has not added a new aircraft in almost a decade]-{resulting in year to year higher maintenance costs per block hour}

**Scope of operation:**

United no longer operates hourly service between the Bay area and Los Angeles. Gradually United shifted

Operations from a major short haul carrier to more medium and long haul operation.

Based on United's July 1, 2010 timetable (**EXHIBIT 9**)

Short haul - under 500 miles- comprises 23.9%

Medium haul - under 2,000 miles- comprises 48.3 %

Long haul - over 2,000 miles comprises 27.8%

**Utilization:**

Based on 2009 annual report:

United A/L fleet of 360 aircraft obtained daily aircraft utilization of 10:34 hours/day. Southwest A/L fleet of 537 aircraft obtained daily aircraft utilization of 11:07 hours/day. JetBlue fleet of 151 aircraft obtained daily aircraft utilization of 11.5 hours/day.

Parlaying a daily :30 minutes/per aircraft - over the entire fleet/30 day month- will obvious result in having an overall **higher total aircraft utilization- allowing when costs are distributed over more hours - in lower block hour costs. (Exhibit 2)**

The significance in aircraft utilization is such where Southwest Airlines deploys a primary short-haul point to point operation with aircraft no more than 20 minutes at a given airport gate before returning to the air. To achieve that high daily aircraft utilization in a short haul market - and high load factor (**Exhibit 8**)is the result of a combined employee hustle & bustle. Turning an aircraft around within 20 minutes or less- is the primary difference of applied energy and operation result difference between a so-called low-cost airline (even when it is not) and higher cost carrier.

**Pay scale:** (extraction union contract -July 1,2010)

United airlines - 1,437 pilots on furlough - Date July 1, 2010

12 year Capt. on B747/B777 pay of $ 190/hour

12 year Capt. On B767/B757 pay of $159/hour

12 year Capt. On A319/A320 pay of $137/hour

**12 year Southwest A/L Capt. B737 pay of $206/hour**

12 year Jet Blue A/L Capt. A320 pay of $159/hour

The terminology of low-cost airline- when applied to Southwest A/**L is a myth**. From mechanics, pilots, attendants, even ground workers and support staff a higher rates of pay than that at United A/L.

Despite bankruptcy and resulting lower cost structure, despite dumping its employee pension plan onto the Pension Guarantee Corp. (and thus, the public) United failed to reduce costs and the annual 2009 loss shows the result. (**Exhibit 4** )

During the high cost of fuel time period of 2008 -(**Exhibit 7**) Southwest A/L with same resources as a United made money- it hedged fuel- whereas a United incurred huge losses. -

In the 2000 decade - other mergers did also not pay off (**Exhibit 3**)

**VII. Conclusion**

Concluding that the contemplated merger will in fact be against the public interest, then §7 of the Clayton Act should be invoked and requires the merger attempt be stopped in its infancy.

**See FTC v. University Health, Inc.**, 938 F.2d 1206, 1223 (11th Cir. 1991) (holding that a defendant must prove the efficiencies); *FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997) (same); U.S. Department of Justice and Federal Trade Commission, **Horizontal Merger Guidelines § 4, at 31 (rev. A**pr. 8, 1997) ("merging firms must substantiate efficiency claims so that the Agency can verify by reasonable means the likelihood and magnitude of each asserted efficiency, how and when each would be achieved (and any costs of doing so), how each would enhance the merged firms' ability and incentives to compete, and why each would be merger-specific.").

The Supreme Court rejected an efficiencies defense in **United States v. Philadelphia Nat'l Bank**, 374 U.S. 321, 371 (1963), stating that an otherwise anticompetitive merger would not be saved because, "on some ultimate reckoning of social or economic debits and credits, it may be deemed beneficial." **See also FTC v. Proctor & Gamble Co.**, 386 U.S. 568, 580 (1967).

**DuPont** 366 U.S. at 332, See also Community Publishers, Inc. v. Donrey *Corp.*, 892 F. Supp. 1146 (W.D. Ark. 1995), *aff'd*, 139 F.3d 1180 (8th Cir. 1998);**University Health**, 938 F.2d at 1224, *Ivaco;* 704 F. Supp. at 1426, 1429.

In **Community Publishers**, the court considered an antitrust challenge to the acquisition of a local newspaper by a larger competitor, which was owned by the same family that owned other competing newspapers. In that case, the court stated: Community Publishers, 892 F. Supp. at 1168 n.17.

Congress recognized this precise problem in passing the **Hart-Scott-Rodino Antitrust Improvements Act**: During the course of the **post-merger** litigation, the acquired firm's assets, technology, marketing systems, and trademarks are replaced, transferred, sold off, or combined with those of the acquiring firm. Similarly, its personnel and management are shifted, retrained, or simply discharged.

In these ways the acquiring and acquired firms are, in effect, irreversibly 'scrambled' together. The independent identity of the acquired firm disappears. 'Unscrambling' the merger and restoring the acquired firm to its former status as an independent competitor is difficult at best, and frequently impossible. **H.R. Rep. No. 94-1373, 94th Cong.**, 2d Sess. 8 (1976); *accord* S. Rep. No. 94-803, at 61 (1976).

Dated: July 5th, 2010 respectfully submitted.......................

M Friedmann

**EXHIBIT: 1**




Southwest Airlines consistently shows higher aircraft utilization - despite not operating long haul flights.

**EXHIBIT: 2**




**Cost difference for each flight hour between United and Southwest aircraft is huge- albeit- United no longer operates B737-300 aircraft.**



**EXHIBIT: 3**


Source: Form 41, T-100, direct carrier reports
billion of $
A decade of losses for US legacy airlines –date: May 1, 2010
2000
1500
1000
500
0
-500
-1000
-1500
-2000
-2500
-3000
-3500
-4000
-4500
-5000
-5500
-6000
-6500
-7000
-7500
-8000
-8500
-9000
-9500
-10000
1Qtr10
2009
2008
2007
2006
2005
2004
2003
2002
2001
2000
1999
American
Continental
Southwest
United
Delta
Northwest
US Air
Notes: Not shown in 2002 results :
Reimbursement (gains) – Air Transportation Stabilization Act :
United $300 Mil.; Delta $398 Mil.; American $358 Mil.; Southwest $271 Mil.; Continental $176 Mil.; Northwest $209 Mil.; Us Airways $214 Mil.;
United 2005 cancelled its pension plan – largest default in US.
United has not added any new aircraft to its fleet in 11 years.
United lost over $10 billion in one decade.
United went Ch11 Dec 2002 – Feb. 2006, longest in US history.
Delta went Ch 11 Sep. 2005 - Apr. 2007
Northwest went CH 11 Sep.2005 – May 2007, merged with Delta 2008
US Air 1st Ch 11 Sep 2002 - Apr 2003; 2nd CH 11 Sep. 2004 – Sep. 2005 merged with America West 2005
Note: all results are net/net and excluding re-organization items.

**EXHIBIT : 4**




United A/L cost savings after under going Ch 11 proceedings several years back- seems no longer be working- in that losses are back again.

Exhibit : 5




High fluctuation of passenger revenue per mile in 2008 -were likely the result of higher fuel costs, and resulting in higher fares.



**EXHIBIT: 6**




Incorrect fuel hedging- causing losses by the hundreds of million.



Exhibit : 7




Every airline experienced huge spike in the cost of fuel during 2008

**Exhibit :8**




United break even load factor went to almost 100% in 2008 - impossible for making a profit.

**EXHIBIT:9**

**Chicago (O'Hare)- IL to Houston (Bush), TX (IAH) 927mi ( extracted from July 1, 2010 Timetable)**

Dep Arr Flight Type Freq St Meal Dur

□= indicates operated by code-share partner CO

0535 0802 UA3634□ 739 67 0 S 2:27
Above Disc. 8/29
0535 0804 UA3634□ 739 X67 0 S 2:29
Above Disc. 8/27, Exc. 8/17 - 8/16, 8/24 - 8/25
0535 0805 UA3634□ 738 0 S 2:30
Above Eff. 8/30
0542 0811 UA3634□ 753 23 0 S 2:29
Above 8/17 - 8/25
0800 1030 UA3635□ 739 7 0 S 2:30
Above 8/22 - 8/29
0805 1034 UA3635□ 739 67 0 S 2:29
Above Eff. 9/4
0805 1035 UA3635□ 753 67 0 S 2:30
Above Disc. 8/28, Exc. 8/22
0805 1036 UA3635□ 739 1245 0 S 2:31
Above Eff. 9/2
0805 1037 UA3635□ 753 X67 0 S 2:32
Above Disc. 8/27, Exc. 8/17 - 8/16, 8/20, 8/24 - 8/25
0814 1050 UA221 319 X67 0 G 2:36
0814 1053 UA221 319 6 0 G 2:39
Above Eff. 8/28
0826 1055 UA221 319 7 0 G 2:29
Above 7/11 - 8/22
0830 1059 UA221 319 X7 0 G 2:29
Above Disc. 8/23, Exc. 7/3
0920 1147 UA4157□ ERJ 6 0 2:27
Above 8/7 - 8/28
0930 1157 UA4157□ ERJ 67 0 2:27
Above 7/10 - 8/1, Exc. 7/11, 7/18, 7/25
0937 1209 UA3636□ 73G 5 0 2:32
Above 8/20 - 8/27
0940 1210 UA3636□ 738 7 0 2:30
Above Eff. 8/22, Exc. 9/5
0940 1213 UA3636□ 735 7 0 2:33
Above 7/11 - 8/15, Exc. 8/1
0940 1215 UA3636□ 735 X67 0 2:35
Above Disc. 8/28, Exc. 8/20, 8/25
0940 1218 UA3636□ 735 X67 0 2:38
Above Eff. 8/30
1047 1319 UA3636□ 73G 6 0 S 2:32
Above Disc. 8/28
1055 1331 UA3636□ 738 67 0 S 2:36
Above Eff. 9/4
1055 1333 UA3637□ 738 X67 0 S 2:38
Above Eff. 8/30
1057 1330 UA3637□ 738 X16 0 S 2:33
Above 8/17 - 8/29
1100 1331 UA3637□ 739 7 0 S 2:31
Above 7/11 - 8/15
1100 1333 UA3637□ 739 X67 0 S 2:33
Above Disc. 8/16
1148 1417 UA7249□ CR7 7 0 2:29
Above Disc. 8/22
1155 1424 UA7528□ E70 6 0 2:29
Above 7/10 - 8/21
1205 1444 UA153 319 6 0 G 2:39
Above Eff. 8/28
1210 1441 UA3788□ 735 7 0 S 2:31
Above 8/22 - 8/29
1210 1444 UA3788□ 735 X6 0 S 2:34
Above Eff. 8/17, Exc. 8/29, 9/5, 9/6
1210 1445 UA4471□ ERJ 6 0 S 2:35
Above Disc. 8/28
1210 1447 UA4471□ ERJ X6 0 S 2:37
Above Disc. 8/16, Exc. 7/4
1355 1626 UA3638□ 738 X67 0 2:31
Above 8/17 - 8/27

Dep Arr Flight Type Freq St Meal Dur

1355 1627 UA3637□ 735 6 0 2:32
1355 1628 UA3638□ 738 X6 0 2:33
Above Eff. 8/30
1355 1629 UA3638□ 735 X6 0 2:34
Above Disc. 8/29, Exc. 7/4, 8/17 - 8/20, 8/23 -
1510 1752 UA121 320 X67 0 G 2:42
Above Disc. 8/23, Exc. 7/5
1514 1753 UA7531□ E70 6 0 2:39
Above Eff. 8/28
1515 1745 UA4470□ ERJ 6 0 2:30
Above 8/21 - 8/28
1515 1747 UA4202□ ERJ X6 0 2:32
Above Disc. 8/22, Exc. 7/4, 7/27, 8/17 - 8/20
1515 1750 UA3788□ 73G X36 0 2:35
Above Eff. 8/30, Exc. 8/31 - 9/2, 9/5
1515 1756 UA4470□ ERJ 6 0 2:41
Above 7/3 - 8/14
1515 1756 UA4470□ ERJ 7 0 2:41
Above 8/22 - 8/29
1515 1759 UA3743□ 735 45 0 2:44
Above 8/19 - 8/27
1529 1808 UA121 319 X67 0 G 2:39
Above Eff. 8/24
1541 1816 UA6746□ CR7 6 0 2:35
Above 7/10 - 8/21
1710 1946 UA3638□ 739 6 0 S 2:36
Above Disc. 8/28
1710 1948 UA3639□ 753 X6 0 S 2:38
Above Disc. 8/29
1710 1948 UA3639□ 753 6 0 S 2:38
Above 9/4 - 9/11
1710 1950 UA3639□ 753 X6 0 S 2:40
Above Eff. 8/30, Exc. 9/2
1740 2015 UA497 319 X7 0 G 2:35
Above Disc. 8/23, Exc. 7/3, 7/16, 8/21
1747 2023 UA501 320 X6 0 G 2:36
Above Eff. 8/24, Exc. 9/5
1755 2030 UA497 319 7 0 G 2:35
Above 7/16 - 8/22, Exc. 7/25
915 2148 UA3640□ 73G X6 0 2:33
Above Disc. 8/18, Exc. 7/4
1915 2151 UA3640□ 735 X6 0 2:36
Above 8/17 - 8/29
1920 2154 UA3640□ 738 X6 0 2:34
Above Eff. 8/30, Exc. 9/5
2043 2309 UA7326□ CR7 6 0 2:26
Above Eff. 8/28
2045 2310 UA703 319 6 0 G 2:25
Above Disc. 8/21
2045 2311 UA703 320 X67 0 G 2:26
Above Eff. 8/24
2045 2313 UA703 319 7 0 G 2:26
Above Eff. 8/29
2045 2320 UA703 320 X67 0 G 2:35
Above Disc. 8/23
2100 2325 UA703 320 7 0 G 2:25
Above 7/11 - 8/22, Exc. 7/18

**Note:**
In addition – CR7 flights (4 day) are jointly operated with code share American A/L
In addition- the Chicago to Houston market - also sees 7 daily Midway airport to Houston Hobby airport operated by Southwest A/L

Based on current aircraft configuration- the combined Chicago to Houston market sees a seat capacity in excess 3,100 daily seats. The ORD-IAH market carries over 2150 daily seats.

**Five flights** are operated with United A319/320 aircraft
**Eight flights** are operated by Continental using B737/500/800/900 aircraft.
**Five flights** are joint operation by Continental Express/United Express/American Commuter aircraft – carrying both UAL-CO flight numbers.
All UA-CO flights carry code-share flight numbers..