James Donato (SBN 146140)
Patrick D. Robbins (SBN 152288)
Jiyoun Chung (SBN 226900)
Mikael A. Abye (SBN 233458)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199
Email: jdonato@shearman.com
          probbins@shearman.com
          jchung@shearman.com
          mabye@shearman.com

Paul L. Yde (Admitted *Pro Hac Vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Ave., NW, Suite 600
Washington, DC 20004
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555
Email: paul.yde@freshfields.com

Attorneys for Defendants UAL Corporation,
United Air Lines, Inc., and Continental Airlines, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Malaney, et al., | CASE NO. 3:10-CV-02858-RS |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD DAMAGES CLAIM** |
| vs. | |
| UAL CORPORATION, UNITED AIR LINES, INC., and CONTINENTAL AIRLINES, INC., | |
| Defendants. | Hearing Date:   October 27, 2011<br>Time:             1:30 p.m.<br>Courtroom:      3<br>Judge:           Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 5

   I.      PLAINTIFFS HAVE NO GROUNDS FOR LEAVE TO AMEND ................................. 5

        A.     Amendment Is Futile Because The Proposed Complaint Fails To Identify A Legally Sufficient Relevant Market ................................. 5

        B.     Amendment Would Severely Prejudice Defendants ................................. 8

        C.     Plaintiffs' Motion Evidences Impermissible Gamesmanship ................................. 10

   II.     THE REQUEST FOR A JURY TRIAL IS UNTIMELY ................................. 11

CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

## CASES

American Home Products Corporation v. Johnson & Johnson, 111 F.R.D. 448
(S.D.N.Y. 1986) ........................................................................................... 12

Beyer Farms, Inc. v. Elmhurst Dairy, Inc., 142 F. Supp. 2d 296 (E.D.N.Y. 2001) ........................ 7

Big Bear Lodging Association v. Snow Summit, Inc., 182 F.3d 1096 (9th Cir. 1999) ................. 7

Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995) ....................................................... 5, 10

Duffy v. Allstate Ins. Co., No. SACV 97-231-GLT (ANX),
1997 WL 809639 (C.D. Cal. Nov. 3, 1997) ........................................................... 5

In re Edwards Theatres Circuit, Inc., 281 B.R. 675 (Bankr. C.D. Cal. 2002)................................. 5

Foman v. Davis, 371 U.S. 178 (1962)............................................................................ 5

Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc., No. 10-15978, 2011 WL 1898150
(9th Cir. May 19, 2011)................................................................................... 7

Goldfish Shipping, S.A. v. HSH Nordbank AG, 623 F. Supp. 2d 635, 641 (E.D. Pa. 2009) ......... 9

Hernandez v. McClanahan, 996 F. Supp. 975, 979 (N.D. Cal. 1998)........................................ 13

Hintze v. Pershing Direct Brokerage Servs., No. 89-15491, 1991 WL 136190
(9th Cir. July 25, 1991) ..................................................................................... 5

Jackson v. Bank of Hawaii, 902 F.2d 1385 (9th Cir. 1990)........................................................ 5, 6

Johnson v. Am. Airlines, Inc., 834 F.2d 721 (9th Cir. 1987)........................................................ 5

Kaplan v. Rose, 49 F.3d 1363 (9th Cir. 1994) ................................................................... 8

Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614 (9th Cir. 1980) ........................................ 11

Lutz v. Glendale Union High Sch., Dist. No. 205, 403 F.3d 1061 (9th Cir. 2005) ..................... 11

Malaney v. UAL Corp. et al., No. 10-17208, 2011 WL 1979870 (9th Cir. May 23, 2011) ....... 1, 2

Pyle v. Hatley, 239 F. Supp. 2d 970, 982 (C.D. Cal. 2002)........................................................ 12

Ricotta v. California, 4 F. Supp. 2d 961, 968 (S.D. Cal. 1998) ................................................ 13

Sencion v. Saxon Mortg. Servs., Inc., No. 10-03108 PSG, 2011 WL 672643
(N.D. Cal. Feb. 17, 2011)................................................................................... 5

Tanaka v. University of Southern California, 252 F.3d 1059 (9th Cir. 2001) ............................... 7

UGG Holdings, Inc. v. Severn, No. CV-04-1137-JFW, 2004 WL 5458426
(C.D. Cal. Oct. 1, 2004) ................................................................................... 7

United States v. E.I. Du Pont de Nemours & Co., 353 U.S. 586 (1957) .........................................7

Wimm v. Jack Eckerd Corp., 3 F.3d 137 (5th Cir. 1993) ............................................................. 10

**RULES**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................... 5

Fed. R. Civ. P. 38(b).......................................................................................................................11

1

## INTRODUCTION

2   Almost exactly one year ago, this Court denied Plaintiffs' request to block Defendants'

3 merger under Section 7 of the Clayton Act because they had failed to establish the most basic

4 element of their antitrust claim -- a relevant product and geographic market.  After substantial

5 fact and expert discovery, two full days of evidentiary hearings, and extensive briefing and

6 argument, the Court found that all of Plaintiffs' proffered relevant markets failed as a matter of

7 law and fact.  Just a few months ago, the Ninth Circuit affirmed this Court's decision rejecting

8 Plaintiffs' market definitions, and expressly held that "Plaintiffs failed to establish a relevant

9 market for antitrust analysis, a necessary predicate for making a claim under §7 of the Clayton

10 Act."  *Malaney v. UAL Corp. et al*., No. 10-17208, 2011 WL 1979870, at *1 (9th Cir. May 23,

11 2011).

12   Plaintiffs' motion to amend the complaint should be denied because it does absolutely

13 nothing to fix their failure to establish the essential element of a relevant market.  Plaintiffs' main

14 proposed amendment is simply to tack on a prayer for damages.  Plaintiffs have stuck with

15 exactly the same market allegations that this Court and the Ninth Circuit found patently

16 inadequate, on a well-developed factual record, to maintain a Section 7 claim.  They have done

17 nothing to correct or address the fundamental defect of failing to establish a relevant market.

18 Plaintiffs' Section 7 claim remains fatally flawed and the motion to amend should be denied as

19 futile.

20   Plaintiffs' motion should also be denied for the unfairness and prejudice it threatens to

21 impose on Defendants.  Plaintiffs have already forced Defendants to expend substantial amounts

22 of time and legal fees responding to their defective Section 7 claim, disrupted Defendants'

23 operations up through the highest executive level, and created unwarranted uncertainty about the

24 merger.  Plaintiffs have had an extraordinary opportunity to establish a cognizable relevant

25 market through substantial fact and expert discovery, evidentiary proceedings, an appeal and a

26 motion to amend, but have failed to satisfy that most basic element of an antitrust case.  Plaintiffs

27 have no good faith basis for seeking to prolong their deficient Section 7 claim, and allowing this

28

1   flawed case to go forward as they request would inflict a grave injustice and extreme prejudice

2   on Defendants.

3   As if these factors were not enough, Plaintiffs' motion also should be denied for the

4   gamesmanship it evidences.  Plaintiffs made the tactical choice to forego a damages prayer to

5   bolster their demand for injunctive relief.  Throughout the evidentiary proceedings before this

6   Court, Plaintiffs insisted that they had absolutely no adequate remedy at law and that damages

7   were unobtainable.  Now, after failing to obtain equitable relief, they seek to pursue a damages

8   remedy that they renounced when it fit their litigation interests.  This gamesmanship should not

9   be permitted in this case.

10   For these reasons, Defendants UAL Corporation, United Air Lines, Inc., and Continental

11   Airlines, Inc. oppose Plaintiffs' Motion for Leave to File Amended Complaint to Add Damages

12   Claim (Doc. #178).  Defendants also oppose Plaintiffs' untimely request for a jury trial of their

13   purported damages prayer.

14   **BACKGROUND**

15   This action began on June 29, 2010, when Plaintiffs filed a Complaint for Injunctive

16   Relief Against Violations of Section 7 of the Clayton Antitrust Act (Doc. #1, the "Complaint" or

17   "Compl.").  Plaintiffs' stated aim was "to enjoin and prohibit the merger of the defendants United

18   [Airlines] and Continental [Airlines]," which had been announced on May 3, 2010.

19   *See* Declaration of Jiyoun Chung ("Chung Decl."), Ex. A at 2.  Plaintiffs defined "the relevant

20   product and geographic markets for purposes of this action" as "the transportation of airline

21   passengers in the United States, and the transportation of airline passengers to and from the

22   United States on international flights."  *Id.* ¶ 29.  Plaintiffs chose not to include a prayer for

23   damages, and instead sought only injunctive relief pursuant to Section 16 of the Clayton Act.

24   *Id.* ¶ 113.  Plaintiffs did not request a jury trial.

25   After Defendants filed answers (Docs. #28 and #29), Plaintiffs filed a motion for a

26   preliminary injunction on August 9, 2010 (Doc. #38).  In advance of the hearing on the

27   preliminary injunction motion, the parties conducted substantial fact and expert discovery.

28   *See* Chung Decl. ¶ 11.  This discovery included the taking of twelve depositions (including those

1   of both Defendants' respective CEOs and Plaintiffs' and Defendants' respective experts).  *Id.*

2   Defendants also made available to Plaintiffs all documents Defendants had previously produced

3   to the Department of Justice in connection with the regulatory review of the merger.  *Id.*

4          This Court held two full days of evidentiary hearings on Plaintiffs' preliminary injunction

5   motion on August 31 and September 1, 2010, and heard post-hearing closing arguments on

6   September 17, 2010.  One key issue at the hearing was establishing the relevant market for

7   Plaintiffs' Section 7 claim.  As this colloquy shows, Plaintiffs proffered several alleged relevant

8   markets:

9               THE COURT: . . . So I just wanted to understand what you're -- as
            of today, what you are telling me I should look at as the relevant
10           market.  As I understand it, it's network carrier -- a network carrier
            market for business travelers; the 13 overlapping airport pairs,
11           which we have just discussed; and a third possible market, which
            was the U.S. airport -- airline industry or U.S. airport industry as a
12           whole.

13              MR. ALIOTO:  Correct.

14   Chung Decl., Ex. B at 653:8-15.  Defendants contended that Plaintiffs had failed to meet their

15   burden of defining a relevant market and that none of these purported markets were legally

16   cognizable for Section 7 purposes.

17          After the evidentiary hearing and post-hearing briefing and argument by the parties, this

18   Court denied Plaintiffs' motion for a preliminary injunction in an Order dated September 27,

19   2010 (Doc. #135, the "September 27 Order").  Chung Decl., Ex. E.  The primary ground for the

20   Court's denial of the motion was that Plaintiffs had "fail[ed] to establish a viable relevant

21   market."  *Id.* at 13:7.  The Court analyzed each of Plaintiffs' proffered markets in detail and

22   found that none of them constituted a legally adequate market under Section 7.  *See id.* at 14:3-

23   22:2.  The Court noted that the only potentially cognizable market might be a city-pairs market

24   (*id.* at 20:17-20), which Plaintiffs repeatedly rejected and declined to use as the basis of their

25   Section 7 claim (*see, e.g.*, Chung Decl., Ex. C at 10:3-11; Ex. B at 648:22-24).  Moreover, the

26   Court found that virtually none of the 49 individual plaintiffs would be affected in any way by

27   the merger and that "nothing in the record presented . . . suggests that these forty-nine individual

28

1    plaintiffs will be irreparably harmed by the merger[.]"  *Id*., Ex. E at 13:9-11, *see also id.* at 23:9-

2    24:13.

3          On October 1, 2010, the Defendants' merger was consummated.  That same day,

4    Plaintiffs filed an appeal of the September 27 Order with the Ninth Circuit.  *See* Doc. #138.

5    After briefing and argument, on May 23, 2011, the Ninth Circuit affirmed the September 27

6    Order.  The Ninth Circuit found that "[t]he city-pair market endorsed by the district court does

7    satisfy the reasonable interchangeability standard," and that Plaintiffs' proposed "national

8    market" does not.  The circuit court expressly concluded that "Plaintiffs failed to establish a

9    relevant market for antitrust analysis, a necessary predicate for making a claim under § 7 of the

10   Clayton Act . . . ."  Chung Decl., Ex. G at 4.[1]  On July 18, 2011, the Ninth Circuit issued a formal

11   mandate giving effect to its May 23, 2011 ruling.

12         Plaintiffs filed the motion to amend on August 22, 2011.  The motion attaches a proposed

13   First Amended Complaint for Damages and Injunctive Relief Against Violations of Section 7 of

14   the Clayton Antitrust Act ("FAC").  The proposed amendment contains no new allegations

15   whatsoever that address the relevant product or geographic market in this case.  In fact, the

16   relevant market allegations are identical to and unchanged from the allegations in the original

17   complaint.  *See* Chung Decl., Ex. H.  Instead, the main proposed amendment is simply a new

18   request for damages in the prayer for relief.  The proposed amended complaint also includes a

19   demand for a jury trial, and a handful of non-substantive allegations purporting to relate to the

20   legally irrelevant topics of the shareholder vote and closing of the merger (FAC ¶¶ 1, 40-41),  the

21   merger between Southwest Airlines and AirTran (*id*. ¶¶ 72-75), speculation about a possible

22   merger by American Airlines (*id*. ¶¶ 110-11), and layoffs at various airlines (*id*. ¶¶ 104-09).[2]

23

24   _____

25   [1]   Plaintiffs focused their appeal mainly on an alleged "national market" for airline travel as the
     purported relevant market in which to evaluate the effects of the merger.  *See* Chung Decl., Ex. F.

26   [2]   These changes are not all highlighted in the redline attached by Plaintiffs to their motion to
     amend.  Counsel for Defendants notified Plaintiffs' counsel of this fact on August 25, 2011.  *See*
27   Chung Decl. ¶ 11.  To date, Plaintiffs have not corrected this document.  For the Court's
     convenience, Defendants have filed with this brief a redline prepared by Defendants that shows
28   all of the differences between the FAC and the original complaint.  *See id.*, Ex. H.

1        **ARGUMENT**

2    **I.      PLAINTIFFS HAVE NO GROUNDS FOR LEAVE TO AMEND**

3             When, as here, a responsive pleading has already been filed, "a party may amend its

4    pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.

5    15(a)(2).  Although leave may be freely given when justice requires, "leave to amend is not to be

6    granted automatically.  A trial court may deny such a motion if permitting an amendment would

7    prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack

8    of merit."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Foman v.*

9    *Davis*, 371 U.S. 178, 182 (1962)); *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)

10   (factors often considered in the Ninth Circuit are:  "bad faith, undue delay, prejudice to the

11   opposing party, futility of the amendment, and whether the party has previously amended his

12   pleadings.").  Plaintiffs' motion fails for these reasons.

13              **A.      Amendment Is Futile Because The Proposed Complaint Fails**
                **To Identify A Legally Sufficient Relevant Market**

14

15             "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."

16   *Bonin*, 59 F.3d at 845.  An amendment is "futile" when the proposed amended complaint would

17   be "subject to a meritorious motion to dismiss" or "when it is factually impossible for the

18   plaintiff to amend the complaint so as to satisfy all elements of a claim."  *Hintze v. Pershing*

19   *Direct Brokerage Servs.*, No. 89-15491, 1991 WL 136190, at *2 (9th Cir. July 25, 1991); *In re*

20   *Edwards Theatres Circuit, Inc.*, 281 B.R. 675, 682 (Bankr. C.D. Cal. 2002).[3]  "Futility includes

21   the inevitability of a claim's defeat on summary judgment."  *Johnson v. Am. Airlines, Inc.*, 834

22   F.2d 721, 724 (9th Cir. 1987) (citation omitted).

23             In light of Plaintiffs' utter failure to establish a relevant market, the futility of the

24   proposed amendment is indisputable.  In the original complaint, Plaintiffs alleged that "[t]he

25

26   [3]     *See also Sencion v. Saxon Mortg. Servs., Inc.*, No. 10-03108 PSG, 2011 WL 672643, at *1
     (N.D. Cal. Feb. 17, 2011) ("A proposed amendment is futile if it would not survive a motion to
27   dismiss for failure to state a claim."); *Duffy v. Allstate Ins. Co.*, No. SACV 97-231-GLT (ANX),
     1997 WL 809639, at *1 (C.D. Cal. Nov. 3, 1997) ("An amendment is futile if it fails to state a
28   valid theory of liability.").

1    relevant product and geographic markets for purposes of this action are the transportation of

2    airline passengers in the United States, and the transportation of airline passengers to and from

3    the United States on international flights."  Chung Decl., Ex. A ¶ 29.  As described by this Court,

4    at the preliminary injunction hearing as well as in their pre- and post-hearing briefs, Plaintiffs in

5    fact put forward several proposed relevant markets:  "a market limited to network carriers

6    competing for business travelers," "thirteen airport-pairs where [Plaintiffs] maintain[ed] the

7    merger is likely to lessen competition," and "the United States airline industry as a whole."  *See*

8    *id.*, Ex. E at 13:15-17.  Then, in their appeal to the Ninth Circuit, Plaintiffs argued that this Court

9    erred by rejecting the "United States Commercial Airline Market" (*i.e.*, the national market) as

10    the relevant market in this case.  *See*, *e.g.*, *id.*., Ex. F at 10.

11        Fatally for Plaintiffs' overall case and the immediate motion to amend, all of the relevant

12    markets Plaintiffs have identified and pursued have been unequivocally rejected by this Court,

13    the Ninth Circuit, or both.[4]  In denying Plaintiffs' preliminary injunction motion, this Court

14    expressly held that all of the relevant markets identified by Plaintiffs were deficient, and that

15    Plaintiffs had therefore "fail[ed] to establish a viable relevant market," which was "fatal to the

16    relief they seek."  *Id.,* Ex. E at 13:6-9, 22:1-2.  The Ninth Circuit affirmed the finding that

17    Plaintiffs had failed to establish any relevant market and did not even "reach Plaintiffs' other

18    arguments on appeal."  *Id.*, Ex. G at 4.

19        The proposed amended complaint does nothing whatsoever to fix this dispositive defect.

20    The proposed FAC leaves untouched the prior relevant market allegations contained in the

21    Complaint -- allegations that two courts determined failed to support a Section 7 case.  Indeed,

22    none of Plaintiffs' new allegations in the FAC relate to the identification of a relevant product or

23    geographic market.  While Plaintiffs added a few non-substantive comments about the

24    shareholder vote and merger closing, the merger between Southwest Airlines and AirTran, and

25    some other legally irrelevant topics, they chose not to say a single new word about the relevant

26

27

28

---

[4]   With respect to the international market mentioned in the Complaint, Plaintiffs appear to have abandoned that market as a relevant market given their failure to pursue it in their prior briefs.  In any event, this Court's rationale for rejecting the other three markets proposed by Plaintiffs would apply equally to a market defined as international flights to or from the U.S.

1   market. They have not answered or responded in any way to the finding of two courts that they

2   have failed to establish a cognizable market.

3           This failure bars Plaintiffs' request to file the proposed FAC and keep this case alive.

4   When, as here, Plaintiffs have done nothing at all to "repair the defects which doomed the

5   original complaint," and the proposed amendment still does not "define properly the product

6   market," Plaintiffs' "request for leave to amend the complaint [must be] denied as futile." *Beyer*

7   *Farms, Inc. v. Elmhurst Dairy, Inc*., 142 F. Supp. 2d 296, 305 (E.D.N.Y. 2001). Indeed, were

8   Plaintiffs allowed for some reason to proceed, the FAC would be subject to immediate dismissal

9   because of its failure to allege a proper relevant market. *See Golden Gate Pharmacy Servs., Inc.*

10  *v. Pfizer, Inc.*, No. 10-15978, 2011 WL 1898150, at *1 (9th Cir. May 19, 2011) ("The failure to

11  allege a product market consisting of reasonably interchangeable goods renders the SAC 'facially

12  unsustainable' and appropriate for dismissal.") (citations omitted); *see also UGG Holdings, Inc.*

13  *v. Severn*, No. CV-04-1137-JFW, 2004 WL 5458426, at *3 (C.D. Cal. Oct. 1, 2004) (analyzing

14  and rejecting counterclaimant's relevant market allegations as clarified in that party's briefing,

15  and holding that "[w]here a plaintiff fails to define his proposed relevant market" properly, "the

16  relevant market is legally insufficient and a motion to dismiss may be granted").[5] Because

17  "[d]etermination of the relevant market is a necessary predicate to a finding of a violation of the

18  Clayton Act," *United States v. E.I. Du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957), and

19  two courts have already found that Plaintiffs have failed to meet this requirement, any need to

20  further consider the motion to amend -- or this case as a whole -- is at an end. The proposed

21  amendment is futile, and the motion should be denied.[6]

22

23  _____

24  [5]    *UGG Holdings* cites many cases for this well-established proposition, including *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001), and *Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999).

25  [6]    The proposed prayer for damages should also be denied because Plaintiffs have no basis for

26  claiming injuries. This Court found on a well-developed fact record that plaintiffs "fail[ed] to demonstrate any injury personal to them" and that at best they have established only

27  "speculative" and *de minimis* injury (assuming there would be injury). Chung Decl., Ex. E at 24-25. The proposed FAC does not add any new allegations of purported injury or harm personal to

28  plaintiffs.

**B.   Amendment Would Severely Prejudice Defendants**

Permitting this case to move forward with a FAC and antitrust claim that are unsupported by any cognizable relevant market definition would inflict fundamental unfairness and severe prejudice on Defendants.  As an initial matter, Plaintiffs have already taken up a significant amount of public and private resources on an antitrust claim that is missing a necessary element.  Plaintiffs have enjoyed substantial expedited fact and expert witness discovery, a complete evidentiary hearing, detailed written and oral arguments, an order from this Court, appellate review, and a motion to amend.  They have had a full opportunity to pursue any relevant market definition they determined appropriate for their antitrust claim, and they used that opportunity to present multiple relevant market definitions to this Court and the Ninth Circuit.  Responding to Plaintiffs' defective claim has imposed substantial burdens on Defendants in the form of legal fees and litigation costs, diversion of employee time and resources up to the highest senior executive level, and unwarranted uncertainty about the legal status of the merger.  Defendants are now incurring additional costs in addressing a motion to amend that does nothing to fix the fundamental defect in Plaintiffs' case.

Plaintiffs should not be permitted to consume even more private and public resources by proceeding with a FAC and claim that are utterly bereft of the essential element of a proper relevant market.  There is nothing left in this case to justify any further proceedings.  Consequently, requiring Defendants to continue to incur legal fees and costs and expend employee time on this litigation would be extremely prejudicial.  *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) ("Expense, delay, and wear and tear on individuals and companies count toward prejudice.").

Any last-minute effort by Plaintiffs in their reply brief to revive their moribund case by resorting to city-pairs or another relevant market should be rejected.  Even if Plaintiffs were to concede at this late time that the city-pair market is a relevant market, Plaintiffs should not be allowed to re-start their case under this theory, which they had the opportunity to litigate a year ago but chose to reject.  As this Court noted, and the Ninth Circuit concurred, substantial evidence about city-pairs was presented during the evidentiary proceedings and available for use

---

1    by Plaintiffs.  *See* Chung Decl., Ex. E at 20:17-20 (September 27 Order) ("although defendants

2    need not establish what they believe to be the relevant market on plaintiffs' motion for a

3    preliminary injunction, given the substantial evidence suggesting city-pairs, plaintiffs' effort to

4    establish anything else never leaves the gate."); *id.*, Ex. G at 4 (Ninth Circuit decision) ("The

5    city-pair market endorsed by the district court does satisfy the reasonable interchangeability

6    standard").  Rather than including city-pairs on the list of purported relevant markets and

7    attempting to show antitrust injury within it, Plaintiffs repeatedly rejected city-pairs as the wrong

8    relevant market and even denounced it as a construct that would stack the deck in Defendants'

9    favor.  *See, e.g., id.*, Ex. C at 10:3-11 ("Taking the broader market of city pairs, rather than

10   airport pairs, results, not surprisingly, in less competitive foreclosure from defendants' merger

11   than does using airport pairs.").  Counsel for Plaintiffs told this Court during the post-hearing

12   argument that "the city-pair stuff is gone.  I mean, it's basically old hat." *Id.*, Ex. B at 648:22-24.

13          Allowing Plaintiffs to reverse course now on their strategic decision to reject city-pairs, or

14   to introduce a wholly new relevant market, one year later, would be a waste of judicial and party

15   resources, unfair and highly prejudicial.  A district court recently faced with a very similar

16   situation -- a plaintiff requesting amendment to adopt a proposition it previously opposed --

17   rejected that tactic:

18              [Plaintiff] should not be permitted a "do-over" to assert new legal
                theories and permutations of its prior claims that it could have
19              asserted much earlier. . . . If [plaintiff] had viable, alternative
                theories of recovery in this case . . . it should not have withheld
20              them while we invested considerable time and judicial resources
                evaluating what it now says was an incomplete set of theories,
21              which emphasized the wrong facts, set forth the wrong sources of
                legal duties and, overall, charted the wrong course to the requested
22              relief.

23

24   *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 641 (E.D. Pa. 2009).  This

25   Court too should not allow Plaintiffs a "re-do" after extensive trial and appellate court

26   proceedings because Plaintiffs chose not to litigate an issue that was before the Court.

27

28

### C. Plaintiffs' Motion Evidences Impermissible Gamesmanship

In an express effort to bolster their claim for equitable relief, Plaintiffs expressly stated to this Court on many occasions that damages were not available to them. These representations included Plaintiffs' insistence that the "*only* remedy available to plaintiffs under federal antitrust law is the injunctive relief afforded by Section 16 of the Clayton Act" and that "[d]amages cannot compensate plaintiffs for their future injuries -- indeed, [Plaintiffs] have not even asked for damages, which are not available under Section 16." Chung Decl., Ex. D at 37:6-9 (emphasis added). Plaintiffs lost their bid for equitable relief because they failed to establish a relevant market and because this Court found that none of the Plaintiffs faced injury or irreparable harm. *See id.*, Ex. E at 24-25.

Plaintiffs' abrupt request for a damages prayer at this late point in the case evidences a sporting approach to litigation that should not be countenanced. There is nothing new whatsoever in Plaintiffs' proposed FAC to warrant their demand for damages. All of the facts on which Plaintiffs' request for damages is based were known to Plaintiffs at the time they filed the original complaint in June 2010. It appears evident that Plaintiffs' motivation for omitting a request for damages was tactical -- they used the decision not to pursue damages to bolster their claim for injunctive relief. After that tactical choice proved unsuccessful, Plaintiffs now ask to replay the same hand for a different remedy.

Plaintiffs request to pursue different remedies in a serial fashion for the same alleged facts and legal claims evidences a type of gamesmanship that ought not to be countenanced. Leave to amend should be denied in this circumstance. *See, e.g.*, *Bonin*, 59 F.3d at 845 ("Additionally, we have held that a district court does not abuse its discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally."); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141 (5th Cir. 1993) ("[A]wareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial

1   of leave to amend on the grounds of bad faith may be appropriate."); *Jackson*, 902 F.2d at 1388

2   ("Relevant to evaluating the delay issue is whether the moving party knew or should have known

3   the facts and theories raised by the amendment in the original pleading.").

4   **II.      THE REQUEST FOR A JURY TRIAL IS UNTIMELY**

5          Because Plaintiffs' motion to amend should be denied it its entirety on the basis of

6   futility, prejudice, and the other factors discussed above, Plaintiffs' additional new request for a

7   jury trial is moot.  The jury request should be denied for the separate and independent reason that

8   it is untimely and any right Plaintiffs had to a jury trial has been waived.

9          Under Federal Rules of Civil Procedure Rule 38, which governs the demand for trial by

10   jury, Plaintiffs were required to make a jury trial demand no later than 14 days after Defendants

11   answered the original complaint.  Fed. R. Civ. P. 38(b).  Here, Plaintiffs filed the Complaint on

12   June 29, 2010, and Defendants answered on August 5, 2010.  Plaintiffs made their first and only

13   request for a jury trial in the motion to amend filed on August 22, 2011.  Consequently, the jury

14   request is untimely and has been waived.

15          Plaintiffs' attempt to add a prayer for damages in the FAC does not re-start the Rule 38

16   clock or allow them to demand a jury trial now.  Simply adding a new type of relief under a pre-

17   existing claim is insufficient to revive a plaintiff's waiver of a jury trial.  *See, e.g., Lutz v.*

18   *Glendale Union High Sch., Dist. No. 205*, 403 F.3d 1061, 1066 (9th Cir. 2005) ("Our case law is

19   clear that the presentation of a new theory does not constitute the presentation of a new issue on

20   which a jury trial should be granted as of right under Rule 38(b).").

21          The Ninth Circuit addressed this issue in an antitrust context in affirming dismissal of the

22   Las Vegas Sun's Clayton Act (and other) claims against various Howard Hughes Casinos.  *See*

23   *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614 (9th Cir. 1979).  The court declined to find

24   that the plaintiff's amended complaint gave rise to a jury right -- despite the fact that the plaintiff

25   "added new legal theories of recovery in its amended complaint" -- because, just like here, "the

26   issues in the original complaint and the amended complaint turn on the same matrix of facts."  *Id.*

27   at 620 (citing *Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1050 (9th Cir. 1974)).

28

The court in *American Home Products Corporation v. Johnson & Johnson*, 111 F.R.D. 448, 452-53 (S.D.N.Y. 1986), also addressed exactly Plaintiffs' situation here and concluded that the jury trial right had been waived.  In *American Home Products*, a defendant served counterclaims that sought only injunctive relief and did not assert a jury trial demand.  *Id.* at 449. Several months later, the defendant sought to amend the counterclaims to add a prayer for damages and a jury trial demand.  The district court held that the jury demand had been waived:

> McNeil asserts that it was not entitled to demand a jury at the time AHP served its reply because McNeil had demanded only declaratory and injunctive relief and not damages on its counterclaims . . . McNeil could have requested damages as well as injunctive relief on its counterclaims and demanded a jury trial at the outset, but it chose not to do so . . . Under these circumstances, I conclude that McNeil waived its right to demand a jury with respect to its counterclaims when it initially chose not to request damages.  That right was not revived when some ten months later McNeil altered its counterclaims to add a request for damages.

*Id.* at 452-53.  The same reasoning applies here in full.  Even if Plaintiffs' request for a jury trial is considered independently, it should be denied as untimely and waived.

## **CONCLUSION**

After substantial proceedings in this Court and before the Ninth Circuit, Plaintiffs face the inescapable truth that they do not have a cognizable Section 7 antitrust case.  A fatal flaw in their conception of the purported relevant market doomed the original complaint, and the proposed amendment replicates exactly the same error.  Plaintiffs have had extraordinary opportunities to establish a relevant market and have failed to meet that most basic element of an antitrust claim. Plaintiffs' complete silence on the market element in their motion can only be interpreted as an admission that they have nothing new to say or allege on this dispositive issue.

Consequently, Defendants respectfully request that, in this instance, the Court not only deny Plaintiffs' motion for leave to file an amended complaint in its entirety, but also dismiss the

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

case with prejudice.[7]  Plaintiffs have no good faith basis for prolonging this action, and allowing

any additional proceedings on their meritless claim would pose a grave injustice to Defendants.

Dated:  September 20, 2011                          Respectfully Submitted,

                                                   SHEARMAN & STERLING LLP


                                                   By:  _____/s/ *James Donato*_____
                                                             James Donato

                                                   FRESHFIELDS BRUCKHAUS
                                                   DERINGER US LLP

                                                   *Attorneys for Defendants*

---

[7]    This Court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim . . . ."  *Pyle v. Hatley*, 239 F. Supp. 2d 970, 982 (C.D. Cal. 2002) (citations omitted).  *See also Hernandez v. McClanahan*, 996 F. Supp. 975, 979 (N.D. Cal. 1998) ("The court may dismiss a complaint on its own initiative for failure to state a claim under Rule 12(b)(6) if the inadequacy of the complaint is apparent as a matter of law.  It is not mandatory to provide a plaintiff notice and an opportunity to be heard.") (citations omitted); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 (S.D. Cal. 1998) (same).