# EXHIBIT C

Volume 3

Pages 637 - 725

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG

| | |
|---|---|
| MICHAEL C. MALANEY, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| VS. ) | NO. C 10-2858 RS |
| ) | |
| UAL CORPORATION, UNITED AIRLINES, ) | |
| INC., and CONTINENTAL AIRLINES, ) | |
| INC. ) | |
| )San Francisco, California | |
| Defendants. ) Friday | |
| ) September 17, 2010 | |
| ) 2:00 p.m. | |

### TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING

**APPEARANCES:**

For Plaintiffs:   Alioto Law Firm
                  555 California Street
                  31st Floor
                  San Francisco, California 94101
              BY: **JOSEPH M. ALIOTO, ESQ.**
                  **THERESA D. MOORE, ESQ.**
                  **THOMAS P. PIER, ESQ.**

                  Gray, Plant, Mooty, Mooty & Bennett
                  500 IDS Center
                  80 South Eighth Street
                  Minneapolis, Minnesota 55402
              BY: **DANIEL R. SHULMAN, ESQ.**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
               *Official Reporter - US District Court*
               *Computerized Transcription By Eclipse*

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

Case3:10-cv-02858-RS Document193-3 Filed11/16/11 Page3 of 6
Case3:10-cv-02858-RS Document136 Filed09/29/10 Page17 of 90
CLOSING ARGUMENT / ALIOTO
653

```
 1  internationally, 80 percent.  The merger would be 80 percent of
 2  it, control 80 percent of the international flights.
 3          THE COURT:  I guess what I'm trying to focus on is, I
 4  recognize there was some evidence in the record that went to
 5  international issues, if you will; but in the brief that you
 6  provided, you have identified for me three alternative relevant
 7  markets, none of which talk about international traffic.
 8          So I just wanted to understand what you're -- as of
 9  today, what you are telling me I should look at as the relevant
10  market.  As I understand it, it's network carrier -- a network
11  carrier market for business travelers; the 13 overlapping
12  airport pairs, which we have just discussed; and a third
13  possible market, which was the U.S. airport -- airline
14  industry or U.S. airport industry as a whole.
15          MR. ALIOTO:  Correct.
16          THE COURT:  Okay.  Why don't we start with that last
17  one, because I'm not sure what that is.
18          MR. ALIOTO:  All right.  All right.  Let me -- okay,
19  but let me just say this.
20          Again, we are looking at a preliminary injunction.
21  And -- and I don't doubt -- and we certainly would -- and we do
22  not want to take the position that we wouldn't be allowed to
23  look into this very issue, because it's just -- we just --
24  we -- let me back up and say this.
25          When they announced the merger, which was done in two
```

*Page Intentionally Left Blank*

Case3:10-cv-02858-RS Document193-3 Filed11/16/11 Page5 of 6
Case3:10-cv-02858-RS Document136 Filed09/29/10 Page12 of 90    648
CLOSING ARGUMENT/ALIOTO

1  means the Department of Justice or anyone else is adopting the
2  airport pair model for purposes of it antitrust analysis.  They
3  are determining that a -- one thing they think needed to be
4  done was for, at a particular airport some slots to be
5  transferred.
6          Well, that doesn't mean that they are implicitly
7  suggesting that's the way to analyze it.  It could be in the
8  New York market they have determined that there needs to be an
9  adjustment and that adjustment is some particular slots at
10 Newark are transferred.
11         But you're -- the fact of the transfer doesn't
12 indicate to me that that is some sort of acknowledgment or some
13 sort of indication by the Department of Justice that they think
14 the proper way to -- from an antitrust perspective, to analyze
15 the market is airport to airport.
16         **MR. ALIOTO:**  Plainly what they are doing, your Honor,
17 obviously, is that they are showing that the concentration is
18 at one airport and it is not at the so-called city -- city pair
19 situation.  I mean, if that were so, they wouldn't have to do
20 what they did or they wouldn't have done.
21         Also, your Honor may recall, we put in
22 Mr. Carson's -- obviously, Professor Carson, he is the
23 antitrust professor in Wisconsin.  He said, This stuff -- the
24 city pair stuff is gone.  I mean, it's basically old hat.  We
25 even gave a citation from one of the Department of Justice's

Case3:10-cv-02858-RS   Document193-3   Filed11/16/11   Page6 of 6
Case3:10-cv-02858-RS   Document136   Filed09/29/10   Page13 of 90
CLOSING ARGUMENT - ALIOTO                                    649

1  persons, Mr. McDonald, right in the brief in which he says --
2  basically, he's also talking about, he's telling the people
3  about mergers, telling them about city pairs, but also airport
4  pairs as well.
5          And the point that I want to make is that the airport
6  pairs are supported by the numbers that are in the record so
7  far. And they show that that price differential is in the
8  range of 40 percent. That is a huge price differential. And
9  it shows that we're talking about from -- we're talking about
10 Continental or United from -- well, Continental from
11 San Francisco to Houston on economy class, as opposed to
12 Southwest --
13         **THE COURT:** Well, that may well be what the record
14 shows, but the significance of that is only if you embrace the
15 concept that that's an appropriate market analysis. If you
16 include Oakland and you include Houston Hobby, you have a very
17 different proposition.
18         **MR. ALIOTO:** You may, except for one thing. The
19 price differential, you will see at page -- you'll see at
20 page -- I will tell you exactly where it is.
21         If your Honor would go to page 28. And what we did
22 was we used the DOJ's own framework for analyzing competitive
23 effects. And this is the so-called SSNIP, which is supposed to
24 give you Significant Non-Transitory Increase in Price. And
25 that's a five percent differential.