Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Thomas P. Pier (SBN 235740)
Angelina Alioto-Grace (SBN 206899)
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA  94104
Telephone:  (415) 434-8900
Facsimile:   (415) 434-9200
Email:  jmalioto@aliotolaw.com
Email:  jmiller@aliotolaw.com

[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael C. Malaney, Katherine R. Arcell, Keith Dean Bradt, Jose' M. Brito, Jan Marie Brown, Robert D. Conway, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Ted Friedli, Donald V. Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Lee M. Gentry, Jay Glikman, Donna J. Johnson, Valarie Ann Jolly, Gail S. Kosach, Rozann Kunstle, Steve Kunstle, John Lovell, Len Marazzo, Lee McCarthy, Lisa McCarthy, Patricia Ann Meeuwsen, L. West Oehmig, Jr., Cynthia Prosterman, Deborah M. Pulfer, Sharon Holmes Reed, Dana L. Robinson, Robert A. Rosenthal, Bill Rubinsohn, Sondra K. Russell, Sylvia N. Sparks, June Stansbury, Clyde D. Stensrud, Sherry Lynne Stewart, Wayne Taleff, Gary Talewsky, Annette M. Tippetts, Diana Lynn Ultican, J. Michael Walker, Pamela S. Ward, David P. Wendell, Christine O. Whalen, and Suraj Zutshi, <br><br> Plaintiffs, <br><br> v. <br><br> UAL CORPORATION, UNITED AIR LINES, INC., and CONTINENTAL AIRLINES, INC. <br><br> Defendants. <br> _____ | CASE NO.:  **CV-10-02858 (RS)** <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:   December 22, 2011 <br> Time:  1:30 p.m. <br> Judge:  Honorable Richard <br> Seeborg |

1

## **TABLE OF CONTENTS**

**I.   INTRODUCTION AND PRELIMINARY STATEMENT** ....................................1

**II.  FACTUAL ALLEGATIONS** ..........................................................................1

**III. ARGUMENT** ............................................................................................3

    **A.**    **The Standard of Review** ................................................................3

    **B.**    **The Doctrine of Judicial Estoppel Precludes Defendants from Taking a Position Inconsistent with Previous Proceedings wherein they Admitted the Existence of a National Air Transportation Market** ................................................................4

        **1. The Doctrine of Judicial Estoppel** ............................................5

        **2.**    **Defendants' Position is Inconsistent with *In re Air Passenger Computer Reservation Systems* and Defendants Succeeded in Persuading the Court that There was a National Air Transportation Market** ................................................6

        **3.**    **Defendants Gain an Unfair Advantage in Asserting Inconsistent Positions** ................................................6

    **C.**    **Defendants Raise Prices on a National Level and the Commercial Realities of the Industry are that the Defendants Operate on a National Level** ................................................7

    **D.**    **A National Market for the Transportation of Air Passengers is Consistent with a Line of Binding Supreme Court Precedent** ..........9

    **E.**    **Relevant Market is a Question of Fact for the Jury** .........................14

        1.    **7th Amendment Right to Trial by Jury** ................................14

**IV.  CONCLUSION** ........................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Agron, Inc. v. Lin*
    2004 U.S. Dist. LEXIS 26605, 2004 WL 555377(C.D. Cal. 2004) ........................ 14

*Allen v. Zurich Ins. Co.,*
    667 F.2d 1162 (4th Cir. 1982) ................................................................. 7

*Beacon Theatres, Inc. v. Westover*
    359 U.S. 500, 504 (1959)....................................................................... 15

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)............................................................................. 4

*Brown Shoe Co. v. U.S.,*
    370 U.S. 294, 325 (1962)...............................................................  7,10,13,14

*Davis v. Wakelee*
    156 U.S. 680 (1895)............................................................................. 5

*Edwards v. Aetna Life Ins. Co.*
    690 F. 2d 595 (6th Cir. 1982) ................................................................. 7

*Erickson v. Pardus*
    551 U.S. 89 (2007)............................................................................... 4

*In re Air Passenger Computer Reservation Systems Antitrust Litigation*
    694 F.Supp. 1443, 1472 (C.D. Cal. 1988) ...................................... passim

*Los Angeles Memorial Coliseum Comm'n v. N.F.L.,*
    726 F.2d 1381, 1392 (9th Cir. 1984) ................................................  14

*Lowery v. Stovall*
    92 F.3d 219 (4th Cir. 1996) ................................................................... 7

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*
    924 F.2d 1484, 1489 (9th Cir.1991*)* ................................................  14

*New Hampshire v. Maine*
    532 U.S. 742 (2001)........................................................................... 5,6

*Nobody in Particular Presents,*
    311 F. Supp. 2d 1048 .......................................................................  14

*Patriot Cinemas, Inc. v. General Cinema Corp.*
    834 F.2d 208 (1st Cir. 1987).................................................................. 7

*Pegram v. Herdrich*
   530 U.S. 211 (2000) ................................................................................ 5

*Ralph C. Wilson Industries v. Chronicle Broadcasting Co.,*
794 F.2d 1359 (9th Cir. 1986) ................................................................ 8

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.,*
   133 F.R.D. 41, 44 (D. Nev.1990) .......................................................... 14

*Scarano v. Central R. Co.*
   203 F.2d 510 (3rd Cir. 1953) .................................................................. 7

*Syufy Enterprises v. American Multicinema, Inc.,*
   793 F.2d 990 (9th Cir. 1986) ................................................................ 14

*Swierkiewicz v. Sorema N.A.*
   534 U.S. 506 (1989) ................................................................................ 4

*Telecor Comm., Inc. v. Southwestern Bell Tel. Co.*
   305 F.3d 1124 (10th Cir. 2002) ............................................................ 14

*United States v. Aluminum Co. of Am.* (Alcoa)
   377 U.S. 271 (1964) .............................................................................. 12

*United States v. Continental Can Co.*
   378 U.S. 441 (1964) ......................................................................... 12,14

*United States v. E. I. duPont de Nemours & Co.* (Cellophane)
   351 U.S. 377 (1956) ................................................................................ 9

*United States v. Grinnell Corp.*
   384 U.S. 563, 576 (1966) .................................................................... 8,13

*United States v. Philadelphia Nat'l Bank*
   372 U.S. 321 (1963) .............................................................................. 11

*William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.*
   561 F.3d 1004 (9th Cir. 2009) ................................................................ 4

**Statutes**

Fed. Rules Civ. Proc. 8(a) ........................................................................ 4

U.S. Const., 7th Amend. .......................................................................... 15

**Other Authorities**

18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) .................... 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 C. Wright, A. Miller, & E. Cooper,
Federal Practice and Procedure § 4477, p. 782 (1981)....................................................5

*Plaintiffs' Opposition to Defendants' Motion to Dismiss*

## I.   INTRODUCTION AND PRELIMINARY STATEMENT

The Defendants have filed a Motion under rule 12(b)(6), alleging that the Plaintiffs' First Amended Complaint, even if all the allegations are taken as true and even if all the inferences are judged in favor of the Plaintiffs, that Plaintiffs' Complaint fails to state a claim under Section 7 of the Clayton Act (15 U.S.C. § 18.)  The basis for the Defendants' Motion is that a national air transportation market is not a relevant market for antitrust purposes.  This position is exactly the opposite of the position taken by United in *In re Air Passenger Computer Reservation Systems Antitrust Litigation,* 694 F.Supp. 1443, 1472 (C.D. Cal. 1988)*,* in which the Defendant argued and asserted that:  "…the *only* relevant air transportation market is the national market."  [emphasis added]

The Defendant is estopped from arguing that there is no such thing as the national air transportation market when, in another proceeding, the Defendant argued exactly the opposite. This Court must not and cannot accept or ignore or allow such manifest duplicity by this Defendant.  The Motion by this Defendant based upon an argument, which is exactly the opposite of an argument it made to another federal court, cannot be countenanced and ignored. The Motion must be denied on this ground alone.

## II.  FACTUAL ALLEGATIONS

Defendants' assertions to the contrary notwithstanding, Plaintiffs have sufficiently stated claims that survive defendants' motion to dismiss.  Plaintiffs are forty-nine individual purchasers of commercial passenger airline travel for their personal use.  Each plaintiff has purchased such travel in the past five years and anticipates continuing to purchase air travel in the future.  (FAC ¶ 6.)

Prior to defendants' merger, United operated the world's fourth largest airline and the third largest domestic carrier, with more than 108 billion revenue passenger miles ("RPMs") in 2008.  (FAC ¶ 9.)  Defendant Continental was the fourth largest domestic carrier and the

*Plaintiffs' Opposition to Defendants' Motion to Dismiss*

fifth largest airline in the world, with more than 80 billion RPMs in 2008.  (FAC ¶ 22.)

Combined, United and Continental are the largest domestic carrier in the United States.  (FAC ¶ 60.)

On May 3, 2010, United and Continental announced an agreement in which the two carriers will combine to form a new company with an equity value of $8.3 billion. (FAC ¶ 39.)  On September 17, 2010, United and Continental announced that both company's stockholders had approved a merger of the two airlines.  (FAC ¶ 40.)  On or about October 1, 2010, United and Continental announced that they had closed their merger.  (FAC ¶41.)

Prior to the merger, United and Continental were both actual competitors and potential competitors in the transportation of airline passengers in the United States. (FAC ¶ 29-38.) Prior to the merger, United and Continental had the wherewithal-financial and otherwise— potentially to provide competing passenger service against each other on any route anywhere in the United States if they believed it would be profitable to do so.  (FAC ¶ 32.)  The behavior of United is constrained by the actual and potential competition from Continental throughout the entire relevant market and submarkets.  (FAC ¶ 35.)  The behavior of Continental is constrained by the actual and potential competition from United throughout the entire relevant market and submarkets.  (FAC ¶ 36.)

Defendants' merger has further concentrated an already highly concentrated market, characterized by mergers, including the most recent merger of Delta and Northwest Airlines in 2006, which made Delta the world's largest carrier, a title that will be passed to the new combined United.  (FAC ¶ 67.)  In addition, defendants themselves are the products of mergers and acquisitions.  (FAC ¶ 68.)

The anticompetitive effects of Defendant's merger are already occurring.  Since the closing of defendants' merger, there have been countrywide airfare increases.  (FAC ¶ 104.)

On October 18, 2011, it was reported that the now merged defendants United/Continental had matched Delta's price hike initiated earlier that day, and at 1 p.m. the next day it was reported that "ALL AIRLINES HAVE MATCHED", according to FareCompare.com, an airline ticket comparison shopping website.  That was estimated to be the seventeenth attempted price hike by U.S. airlines in 2011, and the ninth to succeed.  (Supp. Compl. ¶ 1.)  These price increases were reported to affect prices "across the bulk of their [the airlines] domestic route system" and "across much of the USA."  (Supp. Compl. ¶ 3.)

Significantly, USA TODAY reported that the "airlines are in a better position to raise fares because they've cut flights or the seats they make available aggressively so their planes fly close to full. With the cuts, analysts expect airlines to continue raising prices to post a profit."  (Supp. Compl. ¶ 4.)

The succession of price increases following Continental's merger with United, across the entire national airline market was without cost or other justification. In fact, the October 18, 2011 fare increase "occur[red] as most U.S. airlines [were] set to announce third-quarter profits."  United/Continental announced a third-quarter net profit of $653,000,000 on October 27, 2011.  Although the company's net profit was down from a year ago due to an additional roughly $1 billion in fuel costs (not taking into account the benefit of UAL's fuel hedges), its revenues for the quarter increased 8.7% to $10.1 billion, year on year. (Supp. Compl. ¶ 5.)

## III.  ARGUMENT

The facts alleged by Plaintiffs state a claim for relief in accordance with Rule 8 and *Twombly*.

### A.  The Standard of Review

Rule 8 of the Federal Rules of Civil Procedure sets forth, in pertinent part, a plaintiff's pleading obligations:

**Claim for Relief**. A pleading that states a claim for relief must contain:

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; * * *

Fed. R. Civ. P. 8 (a).

On a motion to dismiss for failure to state a claim, as here, the Court is **required** to accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1(1989). [emphasis added]

A complaint attacked for failure to state a claim "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. Instead, the plaintiff is required only to set forth factual allegations that "raise a right to relief above the speculative level." *Id*. "**Specific facts are not necessary**; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), citing *Twombly*, 550 U.S. at 555 (quotation and other citation omitted; emphasis added). A pleading meeting these requirements defeats a Rule 12 motion to dismiss "even if it strikes a savvy judge that actual proof of th[e] facts is improbable and that a recovery is very remote and unlikely." *Twombly*, at 556. "[D]ismissals for failure to state a claim are disfavored in antitrust actions." *William O. Gilley Enterprises, Inc. v. Atlantic Richfield Co.,* 561 F.3d 1004, 1009 (9th Cir. 2009)

**B. The Doctrine of Judicial Estoppel Precludes Defendants from Taking a Position Inconsistent with Previous Proceedings wherein they Admitted the Existence of a National Air Transportation Market**

Defendant United has not only admitted the existence of a national air transportation market in previous proceedings but actually prevailed in previous litigation in reliance on it. *See In re Air Passenger Computer Reservations Systems Antitrust Litigation*, 694 F.Supp. 1443 (C.D. Cal. 1988). The doctrine of judicial estoppel precludes Defendants

from now arguing that Plaintiffs have not pled a facially sustainable relevant market.  At minimum, Plaintiffs have pled a "plausible" relevant market within the meaning of *Twombly,* as it is the very same antitrust market relied upon by Defendants.

### 1. The Doctrine of Judicial Estoppel

[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689 (1895).  This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

The Supreme Court recognizes several factors in determining whether to apply the doctrine of judicial estoppel in a particular case, including:  1) a party's later position must be "clearly inconsistent" with its earlier position; 2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was mislead"; and 3) whether the party seeking to assert an inconsistent

position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine, supra,* 532 U.S. 742, 750-751.

      **2.**      **Defendants' Position is Inconsistent with *In re Air Passenger Computer Reservation Systems* and Defendants Succeeded in Persuading the Court that There was a National Air Transportation Market**

In *In re Air Passenger Computer Reservation Systems, supra,* 694 F.Supp. 1443, Continental and other airlines brought action against United and other competitors alleging antitrust violations and attempts to monopolize certain air transportation markets and computerized reservation systems. In that case, Defendant United moved for summary judgment against Plaintiff Continental, arguing that "the *only* relevant air transportation market is the national market." *Id* at 1472. [emphasis added] The Court, agreeing with United, granted United's Motion for Summary Judgment re: monopolization of national air transportation market, various local air transportation markets and certain local CRS markets, and noted that, "In this case there is no dispute that the national CRS market and the national air transportation market are distinct markets for antitrust purposes." *Id.* at 1474.

United prevailed in *In re Air Passenger Computer Reservations Systems* arguing the a national relevant market for air transportation--the very same relevant market that they claim cannot support a Section 7 claim in this case. It is clear that Defendants now seek to gain an unfair advantage in this case by deliberately changing positions according to the exigencies of the moment.

      **3.**      **Defendants Gain an Unfair Advantage in Asserting Inconsistent Positions**

The doctrine of judicial estoppel is intended to prevent parties from playing "fast and loose" with the courts and to "protect judicial integrity." *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir. 1982); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3rd Cir. 1953).

The United States Supreme Court observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire v. Maine,* 532 U.S. 742, 750, citing *Allen v. Zurich Ins. Co.,* 667 F.2d 1162 (4th Cir. 1982); accord, *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir. 1996); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir. 1987).  If it should be applied anywhere, it should be when, in a 12(b)(6) motion, a defendant is audacious enough to assert that the argument which it previously made successfully is baseless as a matter of law.

Further, it is unfair and Defendants should not be permitted to make contrary legal arguments because the strong public interest in enforcement of the antitrust laws is undermined by conflicting court decisions resulting from the serial disingenuousness of a litigant.

Judicial estoppel should be applied in this case.  At minimum, Plaintiffs have met the requirements of Rule 8 and *Twombly* in pleading the same relevant market relied upon by Defendants in a prior proceeding in which they prevailed.

**C.  Defendants Raise Prices on a National Level and the Commercial Realities of the Industry are that the Defendants Operate on a National Level**

In *Brown Shoe,* the Supreme Court recognized the importance of "examining such practical indicia as industry or public recognition" in determining market definitions.  *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 325 (1962).

Other airlines have acknowledged a national relevant market for air transportation. "The USAir plaintiffs have acknowledged that the national market is the only relevant air transportation market in this case."  *In re Air Passenger Computer Reservations Systems Antitrust Litigation, supra,* 694 F.Supp. 1443, 1467.

In the *Air Passenger* case, Continental's expert testified that a city-pair cannot be a relevant market absent unusual circumstances:

> In fact, Continental's own expert (Franklin Fischer) testified has testified that a city pair cannot be a relevant market absent unusual circumstances, such as slot-constrained airports and the absence of a market for slots at those airports. Plaintiffs' expert Fischer has also stated that a city or hub cannot constitute a relevant market either.

*In re Air Passenger Computer Reservations Systems Antitrust Litigation, supra,* 694 F.Supp. at 1468. Defendant Continental's expert recognized the ability of airlines to compete anywhere it would be profitable to do so through the availability of slots at airports.

The commercial realities of the industry are the major factors in determining the relevant geographic market. *Ralph C. Wilson Industries v. Chronicle Broadcasting Co.,* 794 F.2d 1359, 1963 (9th Cir. 1986). The commercial realities of the airline industry are such that Defendants operate on a national level—including national planning, marketing, and fare increases.

As alleged in Plaintiffs' FAC and Supplemental Complaint, air fares have increased countrywide since the closing of Defendants' merger. (FAC ¶ 104.) On October 19, 2011, Farecompare.com reported that "All airlines have matched," a price hike that was instituted by Delta the previous day and that this was estimated to be the seventeenth attempted price hike by U.S. airlines in 2011 and the ninth to succeed. (Supp. Compl. ¶ 1.) These price increases were reported to affect prices, "across the bulk of [the airlines] domestic route system" and "across much of the USA." (Supp. Compl. ¶ 3.)

In *United States v. Grinnell Corp.,* 384 U.S. 563, 576 (1966), the defendant was accused of monopolizing a local market for the provision of home security services. The Court, rejecting the argument that the relevant geographic market was local recognized, "that the business of providing such a service [home security services] is operated on a national level." They further considered the fact that Defendant engaged in national planning, was

8

subject to inspection, certification and rate-making by national insurers, and had a national schedule of prices, rates, and terms, although such rates could be varied to meet local conditions, and it dealt with multistate businesses on the basis of multistate contracts.  *Id.* at 576.  And just as Defendants in this case operate on a national level, the appropriate relevant market is the national air transportation market.

### D.  A National Market for the Transportation of Air Passengers is Consistent with a Line of Binding Supreme Court Precedent

The rules governing the definition of the relevant market in an antitrust case are well-established.  "[C]ommodities reasonably interchangeable by consumers for the same purposes make up [the relevant market]."  *United States v. E. I. duPont de Nemours & Co.* (*Cellophane*), 351 U.S. 377, 395 (1956).  "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Brown Shoe, Co. v. United States*, 370 U.S. 294, 325 (1962).  Defining a relevant market is not an end in itself, but rather the means for deducing the effect of the merger on competition within the market or markets identified.  The Supreme Court has never demanded such specificity in defining a relevant market, and there is *no* requirement that every product within the market be a substitute for every other product from the perspective of the consumer.  This fundamental guiding principle is apparent in almost every Supreme Court decision since the Clayton Act's amendment in 1950.

The earliest Supreme Court decision applying the market definition standard is the 1956 *Cellophane* case, 351 U.S. 377.  There, the government alleged that duPont monopolized the cellophane market.  *Id.* at 379.  DuPont argued it had no monopoly, since the relevant market was not cellophane but "all flexible packaging material."  *Id*.  The government sought to distinguish the end-uses of the various forms of "flexible wrapping" – such as paper and aluminum  foil  –  which  do  not  serve  the  same  purpose  as  cellophane,  which  is

"moistureproof." *Id.* at 394, *see id.* at 384.  The government argued – just as the district court reasoned here – that only those substitutes which are "substantially fungible with the . . . product" should be included in the market.  *Id.* at 394.  However, the Supreme Court rejected this proposed rule, holding that "it is [not] a proper interpretation of the Sherman Act to require that products be fungible to be considered in the relevant market."  *Id.*

Next, in *Brown Shoe*, 370 U.S. 294, the Supreme Court reiterated the *Cellophane* standard; however, it also established, for the first time, the permissibility of relying on "submarkets" for purposes of antitrust review:

> The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.  However, within this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes.  The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics or uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.

*Brown Shoe*, 370 U.S. at 325.

The "outer boundaries of the product market" in *Brown Shoe* consisted of *all* "footwear."   370 U.S. at 326 (holding that submarkets consist of men's, women's, and children's shoes implies per force that the overall market is all footwear).  This market included within it men's, women's, and children's shoes – products that plainly do not serve perfectly interchangeable end uses for consumers.  For instance, a grown man faced with escalating men's shoe prices cannot turn to infants' boots as a substitute.  But, this overall "footwear" market was nevertheless defined with respect to "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  Although unstated in the opinion, the rationale of the holding demonstrates that the Court defined the overall market with respect to the broad, general purpose served by shoes – to cover and/or protect the feet.

Moreover, within this overall "footwear" market, *Brown Shoe* identified submarkets of "Men's," "Women's," and "Children's" shoes. *Brown Shoe*, 370 U.S. at 326. But even these submarkets included non-interchangeable substitutes. For instance, the defendant argued that "children's shoes [does not] constitute[ ] a single line of commerce" since "a little boy does not wear a little girl's black patent leather pump," and "a male baby cannot wear a growing boy's shoes." *Id*. at 327. The Supreme Court rejected these arguments, reasoning that "the boundaries of the relevant market must be drawn with sufficient breadth to include the competing products of each of the merging companies and to recognize competition where, in fact, competition exists." *Id*. at 326.

The relevant product market in *United States v. Philadelphia Nat'l Bank*, 372 U.S. 321 (1963) also consisted of non-interchangeable products. There, the Supreme Court held that the proper market for Section 7 analysis was "commercial banking," *id.* at 356, which consisted of various products (e.g., personal and business loans, mortgages, automobile loans, tuition financing, and credit cards) *and* services (e.g., estate planning, safe-deposit boxes, and investment advice). 374 U.S. at 326 and n. 5. Since a customer looking for a safe-deposit box cannot turn to an automobile loan as a substitute, this broadly defined market clearly contained non-interchangeable products – an observation not lost on the defendant banks who argued that "commercial banking in its entirety is not a product line" because as to each product or service "there are different types of customers, different market areas, and, most importantly, different types of competitors and competition." *United States v. Philadelphia Nat'l Bank*, 201 F.Supp. 348, 361 (E.D.Pa. 1962). Again, the Supreme Court rejected these arguments, determining with "no difficulty" that the relevant market included all the non-interchangeable products and services denoted by the general term "commercial banking." 374 U.S. at 356.

The practice of defining markets broadly for purposes of Section 7 continued in *United States v. Aluminum Co. of Am.* (*Alcoa*), 377 U.S. 271 (1964), which defined a broader market

11

of "aluminum conductor" wiring.  *Id*. at 277.  The aluminum conductor market, in turn, consisted of two submarkets: "bare" and "insulated" wiring for use in overhead and underground electrical transmission, respectively.  *Id*. at 274-275.  However, since underground wiring "must be heavily insulated," *id*. at 274, bare wiring *cannot as a physical matter* be used underground and is therefore categorically non-interchangeable with insulated wiring.  The Supreme Court nevertheless classified both products as part of the same market because substitutability must be judged by the *general* purpose served by the product at issue, in *Alcoa*, "the purpose of conducting electricity."  *Id*. at 277.

Similar reasoning was applied in *United States v. Continental Can Co.*, 378 U.S. 441 (1964), a Section 7 challenge concerning an illegal merger of a glass bottle manufacturer and a maker of tin cans.  In that case, the district court had held that the markets for glass containers and tin cans served different purposes and were therefore separate; thus, the merger did not threaten to lessen competition in any market.  *Id*. at 444.  The Supreme Court reversed, finding that both markets were part of the overall container market.  *Id*. at 457.  But, most important for present purposes was the existence of *thousands* of idiosyncratic end uses of glass and tin containers.  As the district court noted:

> The different types of containers manufactured by these different industries are of wide varieties of sizes and shapes and are put to hundreds, if not thousands, of different end uses.

*United States v. Continental Can Co.*, 217 F.Supp. 761, 780 (S.D.N.Y. 1963).  These "thousands" of different uses for containers were found in industries as varied as soft drinks, canning, toiletry, cosmetics, medicines and health, and chemicals.  378 U.S. at 447.  But, even though a soda-pop bottle is not a possible substitute vessel for a sardine canner, the Supreme Court had no trouble placing both containers into the overall market for purposes of judging the legality of the merger.  The Supreme Court held, "we think the District Court employed an

unduly narrow construction of … 'reasonable interchangeability of use or the cross-elasticity of demand' in judging the facts of this case." *Id*. at 452.  The Court continued:

> We reject the opinion below insofar as it holds that these terms as used in the statute or in *Brown Shoe* were intended to limit the competition protected by § 7 to competition between identical products …. Certainly, that the competition here involved … is between products with distinctive characteristics does not automatically remove it from the reach of § 7.

*Id*. at 452-453.   The Supreme Court admonished lower courts not to use the "interchangeability" standard to thwart enforcement of the Clayton Act: "[i]nterchangeability of use and cross-elasticity of demand are not to be used to obscure competition, but to 'recognize competition where, in fact, competition exists.'"  *Id*. at 453 (quoting *Brown Shoe*, 370 U.S. at 326).

Finally, in *United States v. Grinnell Corp.*, 384 U.S. 563, 571-72 (1966), burglar alarms were considered part of the same market as fire alarms because they both served the same purpose of protecting property, even though they are plainly not substitutes for one another. The Supreme Court explained:

> We see no barrier to combining in a single market a number of different products or services where that combination reflects commercial realities.  To repeat, there is here a single basic service – the protection of property … – that must be compared with all other forms of property protection.

*Grinnell*, 384 U.S. at 572.

These cases directly contradict the proposition that the United States airline market cannot exist because a "flight from San Francisco to Newark" is not a competitive substitute for a flight "from Seattle to Miami."  The general purpose of commercial air carriage--the long-distance transportation of passengers—should be considered.  But, requiring overly-detailed specificity within the airline market violates the Supreme court's direct admonition that "[i]nterchangeability of use and cross-elasticity of demand are not to be used to obscure competition, but to 'recognize competition where, in fact, competition exists.'"  *Continental*

*Can,* 378 U.S. at 453 (quoting *Brown Shoe,* 370 U.S. at 326.)  The conclusion that United, Continental, American, Delta, US Airways, Southwest and other airlines do not compete against one another in the United States is as unsupportable under the law as it is belied by common sense.

### E.  Relevant Market is a Question of Fact for the Jury

Defining the "[r]elevant market is a factual issue which is decided by the jury." *Syufy Enterprises v. American Multicinema, Inc.,* 793 F.2d 990, 994 (9th Cir. 1986) (citing *Los Angeles Memorial Coliseum Comm'n v. N.F.L.,* 726 F.2d 1381, 1392 (9th Cir. 1984)); see also *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,* 924 F.2d 1484, 1489 (9th Cir.1991) ("Ordinarily, the relevant market is a question of fact for the jury"); *Agron, Inc. v. Lin, 2004* U.S. Dist. LEXIS 26605, 2004 WL 555377, at *8 (C.D. Cal. 2004*) (same); *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 133 F.R.D. 41, 44 (D. Nev.1990) ("The Ninth Circuit has established that both market definition and market power are essentially questions of fact appropriate for jury consideration"); *Nobody in Particular Presents,* 311 F. Supp. 2d at 1083 ("The scope of the market is usually a question of fact for the jury.") (citing *Telecor Comm., Inc. v. Southwestern Bell Tel. Co.,* 305 F.3d 1124, 1131 (10th Cir. 2002)).

As this Court pointed out in its October 24, 2011, Order Granting Leave to Amend, *Syufy* and other authorities require that the jury's verdict on this issue be supported by "substantial evidence."  (Order Granting Leave at 3:6-9.)  In Plaintiffs' opinion, Defendants' success on a Motion for Summary Judgment in prior proceedings in reliance on the existence of a national market for air transportation provides overwhelming support for Plaintiffs' contentions on this issue.

### 1.  7th Amendment Right to Trial by Jury

The 7th Amendment to the United States Constitution guarantees the right to trial by jury in civil cases:

14

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

Further, the United States Supreme Court has underscored the importance of the right to trial by jury in antitrust cases. In *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959), the Supreme Court declared that "the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade."

## IV.  CONCLUSION

Defendants have admitted and relied upon the existence of a national relevant market for air transportation. The doctrine of judicial estoppel should be applied and Defendants' precluded from asserting an inconsistent position.

A national relevant market is not only in line with the commercial realities of the airline industry but also with a line of Supreme Court precedent which has never been overruled. Defendants operate on a national level and raise air fares on a national level. Defendants admit the existence of a national relevant market for air transportation when it is convenient to do so.

In Plaintiffs opinion, it is clear that they have met the requirements of *Twombly* for "stating a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly, supra,* 550 U.S. 544, 570.

//

//

//

//

15

1          For the reasons discussed above, Defendants' Motion to Dismiss Plaintiffs' First

2    Amended Complaint should be denied.

3

4    Dated:  December 6, 2011

5
                                  ALIOTO LAW FIRM

6

7                            By:  */s/ Joseph M. Alioto*

8                                   Joseph M. Alioto
                               ALIOTO LAW FIRM

9                                   225 Bush Street, 16th Floor
                               San Francisco, CA  94104

10                                  Telephone:  (415) 434-8900
                               Facsimile:  (415) 434-9200

11                                  E-mail:  jmalioto@aliotolaw.com
                               Email:  jmiller@aliotolaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Opposition to Defendants' Motion to Dismiss*

**PLAINTIFFS' COUNSEL**

| | |
|---|---|
| Joseph M. Alioto (SBN 42680)<br>Theresa D. Moore (SBN 99978)<br>Thomas P. Pier (SBN 235740)<br>Angelina Alioto-Grace (SBN 206899)<br>ALIOTO LAW FIRM<br>225 Bush Street, 16th Floor<br>San Francisco, CA  94104<br>Telephone: (415) 434-8900<br>Facsimile:  (415) 434-9200<br>Email:  jmalioto@aliotolaw.com<br>Email:  jmiller@aliotolaw.com | Daniel R. Shulman (MN SBN 100651)<br>*Pro Hac Vice*<br>Julie Lynn Boehmke (MN SBN 317330)<br>*Pro Hac Vice*<br>Jeremy L. Johnson (MN SBN 328558)<br>*Pro Hac Vice*<br>GRAY, PLANT, MOOTY, MOOTY &<br>    BENNETT<br>500 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>Telephone: (612) 632-3000<br>Facsimile:   (612) 632-4335<br>Email: daniel.shulman@gpmlaw.com<br>Email:  julie.boehmke@gpmlaw.com<br>Email:  jeremy.johnson@gpmlaw.com |
| Gil D. Messina (NJ SBN GM5079)<br>*Pro Hac Vice*<br>MESSINA LAW FIRM PC<br>961 Holmdel Road<br>Holmdel, NJ  07733<br>Telephone: (732) 332-9300<br>Facsimile: (732) 332-9301<br>Email:  gmessina@messinalawfirm.com | Jack Lee<br>Derek G. Howard<br>Minami Tamaki LLP<br>360 Post Street<br>8th Floor<br>San Francisco, CA 94108<br>Telephone: (415) 788-9000<br>Facsimile: (415) 398-3887<br>Email: jlee@minamitamaki.com<br>Email: dhoward@minamitamaki.com |
| Thomas V. Girardi<br>Robert William Finnerty<br>Molly Beth Weber<br>Girardi Keese<br>1126 Wilshire Blvd<br>Los Angeles, CA 90017<br>Telephone: (213) 977-0211<br>Facsimile:  (213) 481-1554<br>Email:  tgirardi@girardikeese.com<br>Email:  rfinnerty@girardikeese.com<br>Email:  mweber@girardikeese.com | |

17