James Donato (SBN 146140)
Patrick D. Robbins (SBN 152288)
Mikael A. Abye (SBN 233458)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone:  (415) 616-1100
Facsimile:  (415) 616-1199
Email: jdonato@shearman.com
        probbins@shearman.com
        mabye@shearman.com

Paul L. Yde (Admitted Pro Hac Vice)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Ave., NW, Suite 600
Washington, DC 20004
Telephone:  (202) 777-4500
Facsimile:  (202) 777-4555
Email: paul.yde@freshfields.com

Attorneys for Defendants UAL Corporation,
United Air Lines, Inc., and Continental Airlines, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael Malaney, et al., | CASE NO. 3:10-CV-02858-RS |
| Plaintiffs, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| UAL CORPORATION, UNITED AIR LINES, INC., and CONTINENTAL AIRLINES, INC., | |
| Defendants. | Hearing Date:   December 22, 2011<br>Time:                1:30 p.m.<br>Courtroom:       3<br>Judge:             Hon. Richard Seeborg |

1

# TABLE OF CONTENTS

2

**Page**

3    I.    THE FAC ALLEGES A FACIALLY UNSUSTAINABLE RELEVANT MARKET ........ 1

4    II.    JUDICIAL ESTOPPEL DOES NOT SAVE THE FAC FROM DISMISSAL ................... 2

5    III.    PLAINTIFFS CANNOT RE-LITIGATE THE STANDARDS FOR PLEADING A RELEVANT MARKET ..................................................................................................... 6

6

7    IV.    PLAINTIFFS' NEW "HARM" ALLEGATIONS ARE LEGALLY IRRELEVANT ........ 8

    V.    PLAINTIFFS' ALLEGED JURY ISSUES ARE LEGALLY IRRELEVANT ................... 9

8    VI.    CONCLUSION ............................................................................................................. 10

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620 (5th Cir. 2002)...............................................9

4

*Behrend v. Comcast Corp.*, 626 F. Supp. 2d 495 (E.D. Pa. 2009) ....................................................3

5

*California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109 (N.D. Cal. 2001) ......................................8

6

*City Fire Equip. Co., v. Ansul Fire Prot. Wormald U.S., Inc.*,
    125 B.R. 645 (N.D. Ala. 1989) ...........................................................................................10

7

*Cozart v. Target Corp.*, No. 07-5772, 2008 WL 4330257 (C.D. Cal. Sept. 19, 2008) ...................5

8

9

*E & G Gabriel v. Gabriel Bros., Inc.*, No. 9393 CIV. 0894, 1994 WL 369147
    (S.D.N.Y. July 13, 1994).................................................................................................8, 9

10

*Gabor v. Seligmann*, No. 05-17295, 2007 WL 625234 (9th Cir. Feb. 26, 2007) ........................10

11

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, No. 10-15978,
    2011 WL 1898150 (9th Cir. May 19, 2011) ...................................................................1, 9

12

*Herrington v. Cnty. of Sonoma*, 12 F.3d 901 (9th Cir. 1993) .........................................................8

13

14

*In re Air Passenger Computer Reservations Sys. Antitrust Litig.*,
    694 F. Supp. 1443 (C.D. Cal. 1988).................................................................................3, 4

15

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .....................................................................3, 5, 6

16

*Newcal Indus. Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008)..............................1, 9

17

*Newton v. Poindexter*, 578 F. Supp. 277 (E.D. Cal. 1984) .........................................................10

18

*O'Very v. Spectratek Techs., Inc.*, No. 2 CV 03-540, 2004 WL 5642009
    (C.D. Cal. June 30, 2004)......................................................................................................5

19

*Olympic Coast Inv., Inc. v. Seipel*, No. 08-35740, 2009 WL 2017374 (9th Cir. 2009).................6

20

*Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447 (6th Cir. 2005)....................................5

21

*Queen City Pizza v. Domino's Pizza*, 124 F.3d 430 (3d Cir. 1997) ...........................................1, 9

22

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*,
    499 F.3d 1108 (9th Cir. 2007).............................................................................................7

23

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996)............................2

24

*Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111 (C.D. Cal. 2007)...................................3, 5, 6

25

*UGG Holdings, Inc. v. Severn*, No. CV-04-1137-JFW, 2004 WL 5458426
    (C.D. Cal. Oct. 1, 2004) ....................................................................................................8, 9

26

27

*United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586 (1957)....................................2, 8

28

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000) ............................................. 8

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004 (9th Cir. 2009) .................... 1

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659 (9th Cir. 2009) ...................... 1

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 9

**OTHER**

Cal. Practice Guide, Fed. Civ. Proc. before Trial § 1725 (2011) .................................. 10

1    Defendants reply as follows to Plaintiffs' opposition to the motion to dismiss the First

2    Amended Complaint ("FAC").

3    **I.      The FAC Alleges A Facially Unsustainable Relevant Market**

4        As demonstrated in detail in Defendants' opening brief, the FAC does not state a Section 7

5    claim because it fails to satisfy the controlling legal standards for pleading a viable antitrust

6    relevant market.  The FAC proffers exactly the same purported market that this Court and the

7    Ninth Circuit have already rejected as legally inadequate under governing market definition

8    standards.  This Court and the Ninth Circuit have dispositively held that a properly defined

9    antitrust market requires, in the Ninth Circuit's words in this case, "reasonable interchangeability

10   of use or the cross-elasticity of demand between the product itself and substitutes for it."  Abye

11   Decl., Ex. F at 3 (Ninth Circuit May 23 Decision).[1]  "Plaintiffs have failed to demonstrate that the

12   national market in air travel satisfies this standard."  *Id.* at 4.  "The failure to allege a product

13   market consisting of reasonably interchangeable goods renders the [complaint] 'facially

14   unsustainable' and appropriate for dismissal."  *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,

15   No. 10-15978, 2011 WL 1898150, at *1 (9th Cir. May 19, 2011) (quoting *Newcal Indus. Inc. v.

16   Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)); *see also Queen City Pizza v. Domino's

17   Pizza*, 124 F.3d 430, 436 (3d Cir. 1997) (same).  Consequently, the FAC should be dismissed with

18   prejudice.

19       Plaintiffs' suggestion that dismissal is disfavored in antitrust cases is misplaced.  Opp. at 4.

20   Plaintiffs improperly rely on *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004,

21   1009 (9th Cir. 2009), which was withdrawn and replaced by an opinion without the language

22   Plaintiffs' cite.  *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659 (9th Cir. 2009).

23   In addition, as shown in our opening brief and below here, the Ninth Circuit and its courts, among

24   many others, freely grant dismissals in cases lacking properly alleged relevant markets.

25

26

27

28   _____
     [1] The Abye Declaration was filed with the motion to dismiss on November 16, 2011.

## II.     Judicial Estoppel Does Not Save The FAC From Dismissal

Plaintiffs' main argument against dismissal is a wholly misdirected turn to judicial estoppel.  Plaintiffs continue to fight against the requirement that they must identify a market that meets the legal standards of reasonable interchangeability of use or cross-elasticity of demand. They refuse again in their opposition brief to embrace and apply those controlling requirements, and they make no effort to show that the market alleged in the FAC meets these standards. Instead, they invite this Court to completely excuse them from satisfying the legal requirements for defining a relevant market -- and to ignore the binding decision of the Ninth Circuit in this case and other controlling law -- and let this case go forward on a theory of judicial estoppel.

Plaintiffs' judicial estoppel argument is nothing more than an evasive maneuver to avoid meeting the mandatory legal requirements for stating a relevant market.  Plaintiffs propose that they be allowed to bring a Section 7 case on the basis of a purported market that this Court and the Ninth Circuit have expressly held is legally deficient because it fails to meet governing market definition standards.  Plaintiffs offer no case authority indicating that this Court can or should allow an antitrust action utterly missing the essential element of a viable market to proceed on the basis of judicial estoppel.  Plaintiffs effectively invite this Court into legal error by asking it to permit a Section 7 case to stand in the complete absence of the "necessary predicate" of a properly determined relevant market.  *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957).  On this ground alone, plaintiffs' judicial estoppel argument should be disregarded.

Plaintiffs have also failed to show that the extraordinary remedy of judicial estoppel is even applicable in this case.  As the Ninth Circuit has held, judicial estoppel is an equitable doctrine invoked by a court in its discretion to protect the court against a litigant playing fast and loose with the courts.  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) (applying judicial estoppel against plaintiff who claimed she was unable to work to win workers' compensation benefits and then claimed she was able to work in a subsequent age discrimination case).  It is "an 'extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'  It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged

1   inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead

2   the courts.  Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are

3   necessary to 'secure substantial equity.'"  *Siegel v. Time Warner Inc*., 496 F. Supp. 2d 1111, 1123

4   (C.D. Cal. 2007).  Indeed, the courts have emphasized that judicial estoppel "'is an extreme

5   remedy, to be used only when the inconsistent positions are tantamount to a knowing

6   misrepresentation to or even fraud on the court.'"  *Behrend v. Comcast Corp*., 626 F. Supp. 2d

7   495, 507 (E.D. Pa. 2009) (internal citation omitted); *see also Siegel*, 496 F. Supp. 2d at 1122

8   (judicial estoppel intended to prevent "perversion of the judicial process" and applies where

9   "intentional self-contradiction is being used" to obtain unfair advantage).

10          In addition to applying only in extraordinary circumstances, if at all, judicial estoppel

11   requires proof of several key elements.  These elements include proof that (1) the party's later

12   position is clearly inconsistent with its earlier position; (2) the party succeeded in persuading a

13   court to accept its earlier position; and (3) the party would derive an unfair advantage or impose

14   unfair detriment on the opposing party if allowed to pursue a now inconsistent position.  *New*

15   *Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *Siegel*, 496 F. Supp. 2d at 1122.

16          Plaintiffs fail to offer any basis whatsoever for the discretionary application of judicial

17   estoppel in this case.  Plaintiffs' only argument is that Defendants purportedly took a positive view

18   of a national air travel market in a 1988 case mainly involving an antitrust challenge to the entirely

19   unrelated market for computer systems for travel reservations.  *In re Air Passenger Computer*

20   *Reservations Sys. Antitrust Litig.,* 694 F. Supp. 1443 (C.D. Cal. 1988).  That case provides no

21   support for judicial estoppel here.

22          As the case caption indicates, the parties, facts and issues in that action were substantially

23   different from those in this Section 7 merger case.  In *In re Air Passenger Computer Reservations*

24   *Systems*, Continental Airlines as a *plaintiff*, among others, brought a Sherman Act Section 2

25   monopolization claim against defendants American Airlines and United Airlines.  *Id*. at 1449.  The

26   opinion Plaintiffs cite is the court's ruling on the parties' summary judgment motions.  *Id*.  As the

27   court stated, the "case arises out of defendants' ownership of Computerized Reservation Systems

28   ("CRS")."  *Id*.  "A CRS is composed of computer terminals and printers in travel agents' offices"

---

REPLY MEMO I/S/O DEFS' MOTION TO              3              CASE NO. 3:10-CV-2858-RS
DISMISS FIRST AMENDED COMPLAINT

298938

1   to send and receive air transportation booking information. *Id.* The gravamen of the case was

2   whether CRSs were "essential facilities" or relevant markets that defendants had monopolized and

3   that competitors like Continental were improperly excluded from. *Id.* at 1450-51. To resolve the

4   summary judgment motions, the court analyzed whether CRSs were an essential facility (*id.* at

5   1450-56), whether CRSs were a relevant market in which defendants had monopoly power (*id.*

6   1457-63), whether defendants had engaged in willful acquisition or maintenance of monopoly

7   power in the CRS market (*id.* at 1463-65), and whether plaintiffs sustained antitrust injury and

8   related questions. The thrust of the case involved markets and issues completely unrelated to

9   Plaintiffs' claims here.

10       Significantly, the legal standards applied in the CRS case to determine the relevant CRS

11   market are consistent with the ones applicable here. The court in CRS applied the standards of

12   reasonable interchangeability or cross-elasticity that Plaintiffs here refuse to follow or satisfy. *Id.*

13   at 1457-58. On that legal issue, which is the primary issue in this motion to dismiss, the CRS

14   court and this Court are in harmony.

15       Plaintiffs' pin cites to occasional mentions of a national transportation market do not make

16   *In re Air Passenger Computer Reservations Systems* a basis for judicial estoppel in this case. As

17   the opinion indicates, plaintiffs appear to have added to the primary claims about CRSs a tag-

18   along allegation that American and United monopolized or attempted to monopolize a downstream

19   "national air transportation market" and "various local air transportation markets." *See, e.g., id.* at

20   1466 and 1471. They apparently added these claims mainly under a monopoly leveraging theory

21   that the court ultimately rejected as inconsistent with the requirements of Section 2. *Id.* at 1471-

22   75. The court rejected the transportation claims on the grounds that plaintiffs had failed to carry

23   their evidentiary burdens on summary judgment for the elements of monopolization or attempted

24   monopolization. *Id.* at 1466-67. In stark contrast with the opinion's rigorous analysis of the CRS

25   market question (*id.* at 1457-63), the court did not engage in any analysis of interchangeability or

26   cross-elasticity in relation to the transportation claims.

27       These facts put an end to any possibility of judicial estoppel on the basis of *In re Air*

28   *Passenger Computer Reservations Systems*. Plaintiffs have failed to show that the alleged market

---

REPLY MEMO I/S/O DEFS' MOTION TO          4          CASE NO. 3:10-CV-2858-RS
DISMISS FIRST AMENDED COMPLAINT

1  positions in 1988 and those here are "clearly inconsistent" and resulted in a prior victory that

2  would be unfair to contradict now.  *See New Hampshire*, 532 U.S. at 750; *Cozart v. Target Corp.*,

3  No. 07-5772, 2008 WL 4330257, at *2 (C.D. Cal. Sept. 19, 2008) ("While the doctrine of judicial

4  estoppel serves the important purpose of preventing manipulative parties from prevailing twice on

5  opposite theories in certain circumstances, it may not be used to hamstring a litigant from

6  advancing a particular position when this position is not clearly inconsistent with a prior

7  position.") (internal quotation marks and citation omitted).  The party alignment was different in

8  1988, the main thrust of the case involved a vastly different CRS market, and plaintiffs' tag-along

9  Section 2 claims failed because they did not carry their summary judgment burden of showing

10 genuine issues of material fact for monopolization or attempted monopolization.

11         Fatally for Plaintiffs' theory here, the CRS opinion does not indicate that an alleged

12 national transportation market was a disputed legal issue that the court decided in defendants'

13 favor as an essential element in granting a win to them.  As noted, the court did not engage in any

14 analysis of that alleged market under the relevant market standards and held that plaintiffs lost

15 because they did not meet the summary judgment evidentiary burdens for their Section 2 claims.

16 Had United taken the position that there could be no national air transportation market as a matter

17 of law, as Defendants do here, the ultimate outcome of the case would have been the same -- it

18 appears the court would have reached the same results on summary judgment in the CRS case.  In

19 this circumstance, judicial estoppel cannot be applied.  *See Siegel,* 496 F. Supp. 2d at 1123 ("It is

20 not inequitable to allow defendants to now take a position inconsistent with one taken in a prior

21 litigation if the conclusion reached in that prior litigation would have been the same regardless of

22 the defendants' advocated position."); *Pennycuff v. Fentress Cnty Bd. of Educ.*, 404 F.3d 447, 453

23 (6th Cir. 2005) (finding defendants' position "clearly inconsistent" but declining to apply judicial

24 estoppel because the prior inconsistent position was not the basis for the ruling in the prior action);

25 *O'Very v. Spectratek Techs., Inc*., No. JCV 03-540, 2004 WL 5642009, at *6 (C.D. Cal. June 30,

26

27

28

1   2004) (declining to judicially estop defendants because the inconsistent position had not been the

2   basis of a court ruling, and there was no unfair advantage).[2]

3       Judicial estoppel is also completely inappropriate here because the elements of "perversion

4   of the judicial process," *Siegel*, 496 F. Supp. 2d at 1122, and unfairness simply do not exist.

5   Requiring Plaintiffs to state a relevant market that satisfies the legal standards of reasonable

6   interchangeability of use or cross-elasticity of demand cannot possibly be deemed unfair in any

7   way or a perversion of the judicial process.

8       Plaintiffs have failed to correct the legal inadequacy of their alleged relevant market by

9   meeting the standards of reasonable interchangeability of use or cross-elasticity of demand.

10  Judicial estoppel is not a substitute for satisfying the necessary predicate of affirmatively alleging

11  a legally adequate relevant market.  Plaintiffs' request that they be allowed to proceed with a FAC

12  and case utterly devoid of a viable antitrust market is completely untenable.

13  **III.    Plaintiffs Cannot Re-Litigate The Standards For Pleading A Relevant Market**

14      Plaintiffs' effort to re-litigate the legal standards governing the pleading and definition of a

15  relevant market (Opp. at 9-14) is equally unavailing.  Plaintiffs recite the Supreme Court cases and

16  arguments they have previously raised in the hope of sidestepping the governing standards of

17  interchangeable use or cross-elasticity that are required to define a legally adequate relevant

18  market.[3]  Plaintiffs argue yet again that the national air transportation market is the proper

19  relevant market, and that the Court should look to "the general purpose of air carriage" rather than

20

21  [2] To the extent Continental asserted claims against United based on a national air transportation
22  market theory, those claims failed.  Accordingly, Continental's prior position cannot be the basis
    for judicial estoppel.  *See New Hampshire*, 532 U.S. at 750-51 ("Absent success in a prior
23  proceeding, a party's later inconsistent position introduces no risk of inconsistent court
    determinations, [citation] and thus poses little threat to judicial integrity.") (internal citations and
24  quotation omitted); *see also e.g., Olympic Coast Inv., Inc. v. Seipel*, No. 08-35740, 2009 WL
    2017374, at *1-3 (9th Cir. 2009) ("[T]he doctrine of judicial estoppel plays no role here. . . .  [For
25  among other reasons], Plaintiff was not successful in its earlier position, because, although the
    district court concluded Plaintiff was a business trust, its claim still failed on the merits.").
26  [3] In fact, the five pages of Plaintiffs' opposition arguments on this topic largely repeat the section
    of their Ninth Circuit opening brief entitled "The United States Commercial Airline Market Is A
27  Relevant Antitrust Market."  *See* Abye Decl. Ex. E (Plaintiffs' Ninth Circuit brief at 10-17).
    Defendants' response to Plaintiffs' contentions are stated in detail in their answering brief on
28  appeal, Abye Supp. Decl. Ex. A at 31-42, which Defendants respectfully incorporate by reference
    herein and will not repeat here.

1    interchangeability of use, cross-elasticity and "overly-detailed specificity within the airline

2    market" in defining the relevant market.  Opp. at 13.  In direct opposition to the conclusions of this

3    Court and the Ninth Circuit, Plaintiffs once more condemn "the proposition that the United States

4    airline market cannot exist because a 'flight from San Francisco to Newark' is not a competitive

5    substitute for a flight 'from Seattle to Miami.'"  *Id.*

6         The legal issue of the governing standards to be used in defining a relevant market has

7    been decided and Plaintiffs are barred by the law of the case from attempting to re-litigate that

8    issue now.  The Ninth Circuit was crystal clear on the legal standards governing market definition

9    in this case.  As the court held:

10            In defining the outer bounds of a relevant antitrust market, we
              consider "the reasonable interchangeability of use or the cross-
11            elasticity of demand between the product itself and substitutes for it."
              *Brown Shoe*, 370 U.S. at 325.  To meet this standard, products do not
12            have to be perfectly fungible, *see United States v. E. I. du Pont de
              Nemours & Co*., 351 U.S. 377, 394 (1956); *United States v. Cont'l
13            Can Co.*, 378 U.S. 441, 449 (1964), but must be sufficiently
              interchangeable that a potential price increase in one product would
14            be defeated by the threat of a sufficient number of customers
              switching to the alternate product.  *See Cont'l Can*, 373 U.S. at 453-
15            54 (holding that, although not entirely fungible, metal and glass
              containers are in the same market because "[i]n differing degrees for
16            different end uses manufacturers in each industry take into
              consideration the price of the containers of the opposing industry in
17            formulating their own pricing policy").
18
19            Plaintiffs have failed to demonstrate that the national market in air
              travel satisfies this standard.  As the district court noted, a flight from
20            San Francisco to Newark is not interchangeable with a flight from
              Seattle to Miami.  No matter how much an airline raised the price of
21            the San Francisco-Newark flight, a passenger would not respond by
              switching to the Seattle-Miami flight.
22

23   Abye Decl. Ex. F at 3-4.

24         These holdings are the law of the case setting the legal standards for stating the relevant

25   market in this Section 7 action, and Plaintiffs are barred from seeking to re-litigate them yet again.

26   *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, 499 F.3d 1108,

27   1114 (9th Cir. 2007) (appellate ruling on issue of law made on a preliminary injunction appeal is

28

REPLY MEMO I/S/O DEFS' MOTION TO          7          CASE NO. 3:10-CV-2858-RS
DISMISS FIRST AMENDED COMPLAINT                                    298938

1    binding and becomes law of the case for all further trial court proceedings); *Herrington v. Cnty. of*

2    *Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("The law of the case doctrine states that the decision of

3    an appellate court on a legal issue must be followed in all subsequent proceedings in the same

4    case.") (internal citation and quotation marks omitted); *United States v. Lummi Indian Tribe*, 235

5    F.3d 443, 452 (9th Cir. 2000) (same).[4]

6    **IV.    Plaintiffs' New "Harm" Allegations Are Legally Irrelevant**

7            Plaintiffs' claim that "air fares have increased countrywide since the closing of

8    Defendants' merger" and that "[a]ll airlines have matched a price hike that was instituted by

9    Delta" (Opp. at 8) are legally irrelevant to the question of whether they have pleaded an adequate

10   antitrust market.  Even assuming purely for argument's sake that these allegations are true -- and

11   that they injure the Plaintiffs[5] -- these allegations put the cart before the horse.  Plaintiffs' new

12   alleged effects are irrelevant because purported anticompetitive effects can be evaluated only after

13   a proper relevant market has been identified.  *See UGG Holdings, Inc. v. Severn*, No. CV-04-

14   1137-JFW, 2004 WL 5458426, at *2-3 (C.D. Cal. Oct. 1, 2004) ("'Determination of the relevant

15   market is a necessary predicate to a finding of a violation of the Clayton Act . . .  Substantiality

16   can be determined only in terms of the market affected.'") (quoting *United States v. E.I. du Pont*

17   *de Nemours & Co.*, 353 U.S. 586, 593 (1957)); *California v. Sutter Health Sys.*, 130 F. Supp. 2d

18   1109, 1118 (N.D. Cal. 2001) ("To establish a prima facie case under Section 7 of the Clayton Act,

19   a plaintiff must first define the relevant market, and then establish that the proposed merger will

20   create an appreciable danger of anticompetitive consequences.") (internal citation omitted); *E. &*

21   *G. Gabriel v. Gabriel Bros., Inc.*, No. 93 CIV. 0894, 1994 WL 369147, at *3-4 (S.D.N.Y. July 13,

22   1994) (dismissing claim for failure to plead a cognizable relevant market, stating "[w]ithout an

23   appropriate product market, 'it is impossible for a court to assess the anticompetitive effect of

24

25   [4] On December 12, 2011, the Supreme Court denied Plaintiffs' petition for certiorari, which asked
     the Court to review Plaintiffs' market definition arguments, among other issues.  Abye Supp.

26   Decl. Ex. B.

     [5] In fact, the alleged increases have likely had no effect at all on Plaintiffs because, as the Court
27   concluded in its September 23 Order, "[n]one of the plaintiffs testified to having flown regularly,
     and only one (Ms. D'Augusta) stated that when she does fly she is likely to use United or
28   Continental."  Abye Decl., Ex. D at 23.

1  challenged practices'") (internal citation omitted).  Accordingly, Plaintiffs' allegations pertaining

2  to alleged post-merger pricing events do not rescue in any way their inadequate relevant market

3  pleading.

4  **V.      Plaintiffs' Alleged Jury Issues Are Legally Irrelevant**

5           As last-ditch arguments, Plaintiffs summarily contend that granting the motion to dismiss

6  would somehow violate their right to a jury trial.  Plaintiffs have already presented to the Court the

7  theory that the relevant market is a question of fact reserved for the jury, and the Court correctly

8  found that the *Syufy* case Plaintiffs cite again stands merely for the proposition that a jury's verdict

9  on the issue must be supported by substantial evidence.  Abye Decl. Ex. A at 3.  Plaintiffs' jury

10  contention simply flies in the face of abundant and well-established case law holding that "failure

11  to allege a product market consisting of reasonably interchangeable goods renders the [complaint]

12  'facially unsustainable' and appropriate for dismissal."  *Pfizer*, 2011 WL 1898150 at *1; *see also*

13  *Newcal Indus. v. Ikon Office Solution,* 513 F.3d 1038, 1045 (9th Cir. 2008) ("a complaint may be

14  dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially

15  unsustainable.") (internal citation omitted); *Queen City Pizza,* 124 F.3d at 436 ("Plaintiffs err,

16  however, when they try to turn this general rule into a *per se* prohibition against dismissal of

17  antitrust claims for failure to plead a relevant market under Fed. R. Civ. P. 12(b)(6)."); *Apani Sw.,*

18  *Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 628 (5th Cir. 2002) ("Where the plaintiff fails to define

19  its proposed relevant market with reference to the rule of reasonable interchangeability and cross-

20  elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all

21  interchangeable substitute products even when all factual inferences are granted in plaintiff's

22  favor, the relevant market is legally insufficient, and a motion to dismiss may be granted."); *UGG*

23  *Holdings,* 2004 WL 5458426, at *3 ("Where a plaintiff fails to define his proposed relevant

24  market with reference to the rule of reasonable interchangeability and cross-elasticity of demand

25  . . . even when all factual inferences are granted in his favor, the relevant market is legally

26  insufficient and a motion to dismiss may be granted."); *E. & G. Gabriel*, 1994 WL 369147, at *3-

27  4 ("Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability

28  is, standing alone, valid grounds for dismissal.").

REPLY MEMO I/S/O DEFS' MOTION TO            9            CASE NO. 3:10-CV-2858-RS
DISMISS FIRST AMENDED COMPLAINT                                                    298938

1    The notion that dismissing Plaintiffs' claim would somehow infringe on their Seventh

2    Amendment rights is equally inconsistent with case law.  Plaintiffs cite no case law on point and

3    that proposition would effectively negate Rule 12(b)(6).  *See Newton v. Poindexter*, 578 F. Supp.

4    277, 282-83 (E.D. Cal. 1984) ("Plaintiffs' responsive papers are . . . devoid of authority for their

5    contention that motions to dismiss pursuant to Federal Rule of Civil Procedure 12 violate

6    plaintiffs' right to a jury trial.  It appears to the Court, however, that the plaintiffs' contention

7    proceeds from a fundamental misapprehension of the respective roles of the court and the jury.");

8    *Gabor v. Seligmann*, No. 05-17295, 2007 WL 625234, at *1 (9th Cir. Feb. 26, 2007) ("Because

9    the district court properly dismissed the Gabors' action for failure to state a claim, the Gabors had

10   no right to a jury trial."); *see also City Fire Equip. Co.,  v. Ansul Fire Prot. Wormald U.S., Inc.*,

11   125 B.R. 645, 649 (N.D. Ala. 1989) ("While motions to dismiss and motions for summary

12   judgment may be dispositive, they do not impact on the right to a jury trial.  They merely involve

13   legal issues as to whether any trial is necessary. . . . The granting of such motions does not deprive

14   a party of a right to a jury trial.") (emphasis omitted).

15   **VI.    Conclusion**

16   For these reasons, and the reasons stated in Defendants' opening brief for the motion to

17   dismiss, the FAC and this case should be dismissed with prejudice.[6]

18   Dated:  December 15, 2011                    Respectfully Submitted,

19                                               SHEARMAN & STERLING LLP

20

21                                               By:  _____/s/ *James Donato*_____
                                                          James Donato

22                                               FRESHFIELDS BRUCKHAUS
                                                 DERINGER US LLP
23
                                                 *Attorneys for Defendants*
24

25

26   _____
     [6] The Court should note that this motion to dismiss relates to the FAC as well as Plaintiffs'
     subsequently filed Supplemental Complaint.  Plaintiffs acknowledge and agree with this.  *See*
27   Abye Supp. Decl., Ex. C.  *See also* 8 Cal. Practice Guide, Federal Civ. Proc. before Trial § 1725
     (2011) ("Unlike an amended pleading, a supplemental pleading does not replace the original.
28   Rather, it simply adds new allegations to be considered in conjunction with the original.").